OPINION OF THE COURT
Phyllis B. Gangel-Jacob, J.
Plaintiff and defendant had been same sex domestic partners since in or about 2001 when defendant, a person of considerable assets and income, invited plaintiff to move in with him. Plaintiff was a student with little or no income at the time. During the course of their relationship the defendant gave plaintiff expensive gifts, including two automobiles and a ski house in plaintiffs name. In 2005 the couple, whose primary residence was in Westchester, New York, decided to take advantage of recent Massachusetts legislation that permits people of the same sex to marry. They arranged for and took part in a marriage ceremony to each other in Massachusetts on February 14, 2005. However, Massachusetts General Laws Annotated, chapter 207, § 11 provides:
“§ 11. Non-residents, marriages contrary to laws of domiciled state
“No marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void.”
As was their intention from the beginning, the parties left Massachusetts and returned to New York to continue to primarily reside in their Westchester domicile. They also frequently resided in a pied-á-terre shared by them in New York City. Over the next several months, the parties’ relationship deteriorated and they separated. In September of 2005 defendant’s attorney *643 drafted a “separation agreement” which both parties executed in the manner in which a deed should be executed. The agreement recites in relevant part that
“the parties desire to confirm their separation and make arrangements in connection therewith, including the settlement of their property rights, and other rights and obligations growing out of the marriage relation. . . . Now, therefore, in consideration of the premises and of the mutual promises hereinafter contained, the parties agree as follows” (order to show cause, dated July 5, 2006, exhibit B).
Among other things, the agreement provides for division of the real and personal property accumulated by the parties during their time together; it also provides for a one-time payment by defendant to plaintiff of the sum of $780,000, described as “the only support, maintenance, or other form of payment by either party hereto to the other” (agreement at 3). Also, among other things, the agreement, which contains mutual releases, was fully performed upon its execution by the parties, respectively, on September 21 and September 22, 2005.
During this period, in December 2005, the Appellate Division, First Department, reversed the New York County trial court in Hernandez v Robles (26 AD3d 98 [1st Dept 2005]) by holding that the New York State Domestic Relations Law does not permit same sex marriages and that such statutory scheme is constitutional in that it does not violate the Due Process and Equal Protection clauses of the New York State Constitution. (Id.)
On January 20, 2006 plaintiff commenced an “Action For A Divorce” against defendant by filing a summons with notice with the clerk of this court. Plaintiffs action seeks a judgment of absolute divorce dissolving the marriage between the plaintiff and the defendant on the ground of cruel and inhuman treatment (Domestic Relations Law § 170 [1]). In light of the Appellate Division decision in Hernandez v Robles (supra), defendant moved by order to show cause for summary judgment dismissing plaintiff’s action for failure to state a cause of action. Defendant’s motion also seeks a declaration that, as a matter of law, since the parties were never married, the agreement was void ab initio and all property transferred by defendant to plaintiff thereunder must be returned to defendant.
On July 5, 2006 this court stayed plaintiffs action for divorce pending the New York State Court of Appeals decision in Her *644 nandez v Robles, which, among other cases, had been accepted by that Court for review. By decision dated July 6, 2006, the Court of Appeals held that “the New York Constitution does not compel recognition of marriages between members of the same sex. Whether such marriages should be recognized is a question to be addressed by the Legislature.” (Hernandez v Robles, 7 NY3d 338, 356 [2006].)
The motions before me are defendant’s order to show cause pursuant to CPLR 3212 for summary judgment which seeks dismissal of the plaintiffs action for divorce and rescission of the agreement as void ab initio as a matter of public policy and lack of consideration and voidable because of mutual mistake. Plaintiff has cross-moved for summary judgment dismissing defendant’s counterclaims that seek rescission of the agreement.
Defendant’s first counterclaim alleges failure of consideration, and recites that the consideration for the agreement was to be the dissolution of the parties’ marriage. Defendant’s second counterclaim alleges the agreement violates this state’s public policy which rejects recognition of same sex marriages and is therefore void, and the transfer by defendant to plaintiff of $780,000 as support pursuant to the agreement is thus also void as a matter of public policy. Defendant’s third counterclaim (denominated as a “second” counterclaim) alleges the agreement is voidable based upon the doctrine of mutual mistake; that being that both parties mistakenly believed they were married and had the capacity to enter into the agreement, while under the laws of both the states of New York and Massachusetts, their marriage was null and void from the beginning making the agreement null and void from the beginning. Each counterclaim seeks the return of the $780,000 paid by defendant to plaintiff pursuant to the agreement.
Defendant argues that since there was no marriage there could be no separation agreement as a ground for divorce; since the marriage was null and void from the beginning, the agreement was void ab initio, and it must be rescinded and the parties returned to their respective positions before they performed it.
I find the parties’ marriage to be void under the laws of either the State of New York where both parties reside, or the State of Massachusetts where the purported marriage ceremony took place (see, Hernandez v Robles, 7 NY3d 338 [2006], supra; Mass Gen Laws Ann, ch 207, § 11, supra). In this regard, under *645 Massachusetts General Laws Annotated, chapter 207, § 11, sua sponte, I hereby declare the marriage between plaintiff David Gonzalez and defendant Steven Green which purportedly took place on February 14, 2005 in Massachusetts to be null and void. Accordingly, defendant’s motion is granted to the extent that it seeks dismissal of plaintiffs “Action For A Divorce” for failure to state a cause of action; in all other respects, defendant’s motion is denied.
Plaintiffs cross motion to dismiss defendant’s counterclaims for rescission of the agreement is granted.
“New York courts have long accepted the concept that an express agreement between unmarried persons living together is as enforceable as though they were not living together . . . provided only that illicit sexual relations were not ‘part of the consideration of the contract’.[*]. . . The theory ... is that while cohabitation without marriage does not give rise to the property and financial rights which normally attend the marital relation, neither does cohabitation disable the parties from making an agreement within the normal rules of contract law” (Morone v Morone, 50 NY2d 481, 486 [1980] [citations omitted]).
Furthermore, “the holding [in Hernandez v Robles] does not negate the existence of same sex relationships, nor the reality that some same sex relationships dissolve, and the courts are called upon [to] resolve disputes regarding the distribution of assets of such relationships.” (Cannisi v Walsh, 13 Misc 3d 1231 [A], 2006 NY Slip Op 52075[U], *3 [Sup Ct, Kings County 2006]; cf., DeLyra v DeLyra, 74 NY2d 872 [1989].) In this regard, there is “no impediment to enforcement in a contract action of the provisions of the parties’ agreement insofar as it concerns their personal property and . . . monetary obligations” (Singer v Singer, 261 AD2d 531, 532 [2d Dept 1999]; see, Anonymous v Anonymous, 2 Misc 3d 1002[A], 2004 NY Slip Op 50080[U], *7 [Sup Ct, NY County 2004]), and defendant’s counterclaim that the agreement is void ab initio as against public policy because the parties are a same sex couple who were not actually married when they entered into the agreement is dismissed.
Defendant’s claim of lack of consideration similarly fails.
“The valid consideration which will support a *646 contract need not be equal on both sides, and if a minimal yielding of a position by one side promotes an agreement, then it will be deemed enforceable. There is no need to measure the relative weight of the consideration provided by each party.” (Silver v Starrett, 176 Misc 2d 511, 519 [Sup Ct, NY County 1998].)
Here, as in Silver v Starrett (supra), the agreement provides at the outset that it is made “in consideration of the premises and of the mutual promises hereinafter contained” (agreement at 1). The agreement, which was drafted with deliberation by defendant’s own attorney, purports the settlement of all claims between the parties — indeed, it contains a mutual release of all claims, causes of action or demands that might arise in law or in equity which either party has, ever had or will have against the other — which further supports this court’s finding of valid consideration in support of enforcement of the agreement.
Apparently, however, the defendant, who on each counterclaim seeks the return of the $780,000 he paid to plaintiff upon his execution, and, thus, his ratification, of the agreement, mistakenly believes such things as promises to act or to forbear from acting that constitute detriment to the promisor are not sufficient consideration to support the agreement in light of the tangible sums he paid to plaintiff, upon its execution (which he selectively characterizes as support or maintenance, but which is also defined in the deliberately drafted agreement as an “other form of payment by either party hereto to the other” [agreement at 3]). As set forth above, the law is otherwise (e.g., Silver v Starrett, supra; Anonymous v Anonymous, supra) and defendant’s assertions in this regard are intrinsically mistaken. Nevertheless, to further alleviate defendant’s curious logic in this regard, I find that the plaintiff delivered tangible property of more than sufficient value to defendant in consideration of his entering into the agreement.
On a summary judgment motion, the court searches the entire record (CPLR 3212 [b]; see, Federal Natl. Mtge. Assn. v Katz, 33 AD3d 755, 755 [2d Dept 2006]). Here, as part of the division of property between the parties that is referred to in the agreement, was the transfer by plaintiff of title to his ski house to defendant. This valuable consideration is more than sufficient to support the enforceability of the agreement. Nor, as defendant contends, was there a failure of consideration because there could be no divorce; it is against the public policy of this state *647 for anyone to contract to obtain a divorce. Accordingly, defendant’s counterclaim that the agreement is void for lack of consideration is dismissed.
Nor do I find that the agreement is voidable under the doctrine of mutual mistake. Defendant claims that, since both sides mistakenly thought they were married at the time they entered into the agreement, with all of the rights and obligations that attend such status, the fact that they were not actually married when they believed they were should vitiate the agreement. However, defendant defeats his own argument by his own statement in his moving papers in support of his motion; he asserts:
“The Court should note that the Plaintiff and I never filed Joint-tax Returns — and always filing such returns as ‘single’ and we never purchased property as married people and only had the marriage, because it seemed like a nice ‘thing’ to have, since couples in the ‘gay community’ are seeking such status” (defendant’s moving affidavit sworn to June 26, 2006, at 3 n 1).
It could not be more obvious that defendant never took the idea that he was married to plaintiff seriously. Moreover, the law of New York at the time the parties returned from Massachusetts was not yet settled on the issue of same sex marriages, and the law of Massachusetts was that it had to be recognized in both Massachusetts and the jurisdiction in which the parties resided in order to be valid in Massachusetts. Whether or not the parties considered themselves married in nature, defendant, a sophisticated businessman, must have considered the strong possibility of illegality while the law was in such a developing state. Accordingly, defendant’s position that there was a mutual mistake of fact which impairs the validity of the agreement is disingenuous. Nor is the agreement invalid under the doctrine of mutual mistake of law. CPLR 3005 provides: “When relief against a mistake is sought in an action or by way of defense or counterclaim, relief shall not be denied merely because the mistake is one of law rather than one of fact.” As explained by Professor David D. Siegel, in his Practice Commentaries to this statute (McKinney’s Cons Laws of NY, Book 7B, CPLR C3005:l, at 621):
“The point is, that one cannot draw a total parallel between a mistake of law and a mistake of fact and permit undoing of the transaction for a mistake of law merely because a mistake of fact might have justified it.
*648 “It really leaves the matter to the court to determine whether the particular law mistake is sufficiently analogous to a fact mistake to justify a judicial result to which the fact mistake would lead. It does not permit a mere misreading of the law by any party to cancel an agreement. If it did, the courts would be flooded with applications to get out from under because one party assumed its right to be of a kind and quality greater than it was. As long as the mistake has not been induced by the other party’s misrepresentations . . . resort to CPLR 3005 may be misplaced.”
This interpretation of the statute has been validated by the Appellate Division, First Department, in Justice Nardelli’s opinion for the Court in Jossel v Meyers (212 AD2d 55, 57 [1st Dept 1995]):
“Where the parties have made an instrument as they intended it should be, and the instrument expresses the transaction as it was understood and designed to be made, then the party who had an opportunity to know the contents of the instrument cannot obtain cancellation or reformation because he misunderstood the legal effect of the whole or of any of its provisions; equity will not grant a rescission although one of the parties ‘ — and as many cases hold, both of them — ’ may have mistaken or misconceived its legal effect ... ‘It is no accident that much of the case law on CPLR 3005 . . . involve examples of its non-application. ’ (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3005:l, at 620-621.)” (Citations omitted.)
Here, as in Jossel v Meyers (supra), defendant’s assertion of mutual mistake of law is insufficient to support a claim of rescission in this case. Defendant’s attorney drafted the agreement. Its contents express the transaction as defendant desired it to be. And, as set forth herein, whether the law of New York does not recognize the validity of the cohabiting parties’ marriage, it does recognize the validity of the cohabiting parties’ right to settle their affairs by agreement.
Accordingly, it is hereby ordered, adjudged and declared that the parties’ marriage is null and void under Massachusetts General Laws Annotated, chapter 207, § 11; and it is further ordered and adjudged that defendant’s motion is granted to the extent only that plaintiffs action for a divorce pursuant to Domestic *649 Relations Law § 170 (1) is dismissed, and in all other respects defendant’s motion is denied; and it is further ordered and adjudged that plaintiffs cross motion is granted to the extent that each and every counterclaim asserted by defendant for rescission of the agreement is dismissed, and the agreement is hereby declared valid and in full force and effect.
Any issues not addressed herein are deemed denied.

 The obvious crux of the agreement at bar is the division of tangible property between separating parties, not illicit sexual relations.