OPINION OF THE COURT
Joan B. Lefkowitz, J.
The issue raised herein is whether the Westchester County Executive’s executive order requiring county agencies to recognize same-sex marriages where validly contracted out of state, is lawful. I hold that it is.
Background
On June 6, 2006, defendant, in his official capacity as County Executive, issued Executive Order No. 3 of 2006 which provides:
“every department, board, agency, and commission of the County of Westchester under my jurisdiction [shall] recognize same sex marriages lawfully entered into outside the State of New York in the same manner as they currently recognize opposite sex marriages for the purposes of extending and administering all rights and benefits belonging to these couples, to the maximum extent allowed by law.”
The preceding whereas clauses in the executive order referred to, inter alia, opinions of the State Attorney General and State Comptroller.
The State Attorney General issued an informal opinion, authored by the Solicitor General, on March 3, 2004 (2004 Ops Atty Gen No. I 2004-1), which concluded that the New York State Legislature did not intend to authorize same-sex marriages, but a distinct legal question existed with respect to recognition of same-sex unions from other jurisdictions.
On October 8, 2004, the State Comptroller issued an opinion, authored by the counsel to the Retirement System, which concluded that the Retirement System would recognize same-sex Canadian marriages under principles of comity.
On or about August 23, 2006, plaintiffs commenced the within action claiming a violation of section 51 of the General Municipal Law (commonly referred to as a taxpayers’ action) and seeking a preliminary injunction with respect to Executive Order No. 3 of 2006. Section 51 provides in pertinent part:
“All officers, agents, commissioners and other *811 persons acting, or who have acted, for and on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation . . .
Defendant moved to dismiss the complaint. Plaintiffs served an amended complaint containing two causes of action, to wit: (1) a taxpayers’ action and (2) alleged violation of New York State Constitution, article IX, § 2 (c) and Municipal Home Rule Law § 10 (1) (i). The amended complaint seeks declaratory and injunctive relief. Defendant moves to dismiss the amended complaint.
Nonparties Sabatino and Voorheis move for leave to intervene and by separate motion to dismiss the complaint. Subsequently, the proposed intervenors moved to dismiss the amended complaint and submitted a proposed verified answer to the amended complaint.
Defendant Spano does not oppose the motion for intervention and plaintiffs do not object. Therefore, the motion for leave to intervene is granted. (CPLR 1013.) Defendants-intervenors (hereafter sometimes referred to with defendant Spano as defendants) are a same-sex couple who reside in Westchester county and who were validly married in Canada.
Motions to Dismiss
The court deems the separate motions of the defendants to dismiss the original complaint as moot but has considered the affidavits and exhibits to those motions on the motions addressed to the amended complaint.
On a motion to dismiss the pleading pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the complaint is given a liberal construction, the facts alleged are deemed true, the pleader is given every favorable inference and the only question is whether the plaintiffs in fact have a cause of action under any cognizable legal theory. (Leon v Martinez, 84 NY2d 83 [1994]; Adams v Hickey, 35 AD3d 328 [2d Dept 2006]; see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582 [2005]; Siegel, NY Prac § 265 [4th ed].) Rather than *812 delay decision herein by giving notice that the motions to dismiss be converted into ones for summary judgment (CPLR 3211 [c]), the court has considered the evidentiary material submitted by the parties to determine if the plaintiffs have a cause of action. (International Oil Field Supply Servs. Corp. v Fadeyi, 35 AD3d 372 [2d Dept 2006]; Steiner v Lazzaro & Gregory, 271 AD2d 596 [2d Dept 2000]; Meyer v Guinta, 262 AD2d 463 [2d Dept 1999]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 03211:25, at 43-46.)
The Causes of Action
Defendant Spano and defendants-intervenors move to dismiss the first cause of action. The defendants argue that plaintiffs must prove illegality by defendant Spano to sustain the taxpayers’ claim and that they have failed to do so because he has not legislated and no actual funds have yet been disbursed. However, if plaintiffs can demonstrate that defendant Spano has exceeded his authority or that the underlying substance of the executive order is illegal, it appears prima facie that the claim pursuant to section 51 of the General Municipal Law is viable, if only fleetingly. (Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014 [1983]; Slattery v City of New York, 266 AD2d 24 [1st Dept 1999]; cf. Annotation, Validity of Governmental Domestic Partnership Enactment, 74 ALRSth 439, § 2.)
Furthermore, the second cause of action in the amended complaint which incorporates the allegations of the taxpayers’ action alleges a violation of a state constitutional provision which is sufficient to confer standing on plaintiffs who are taxpayers in Westchester county. (Matter of Schulz v State of New York, 217 AD2d 393 [3d Dept 1995].) Plaintiffs’ motives are not relevant. (103 NY Jur 2d, Taxpayers’ Actions § 24.) The fact that an injury (or illegal disbursement of funds) has not actually occurred does not prohibit the court from restraining the alleged illegal act. (Matter of Korn v Gulotta, 72 NY2d 363 [1988]; 103 NY Jur 2d, Taxpayers’ Actions § 28.)[1]
Recognition of Out-of-State Marriages
It is well settled in New York that the courts as a matter of comity will recognize out-of-state marriages, including common- *813 law marriages, unless barred by positive law (statute) or natural law (incest, polygamy) or otherwise offensive to public policy. (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980]; Matter of May, 305 NY 486, 493 [1953]; Thorp v Thorp, 90 NY 602, 605 [1882]; Van Voorhis v Brintnall, 86 NY 18, 26 [1881].) These cases, of course, all involved a male and female as couples. (Also see, Shea v Shea, 268 App Div 677, 681 [2d Dept 1945] [dissenting op], revd on dissenting op 294 NY 909 [1945]; 55 CJS, Marriage § 6; 45 NY Jur 2d, Domestic Relations §§ 4-7.) Nevertheless, New York has recognized out-of-state marriages, valid where contracted, though the purpose was to evade New York laws proscribing such marriages. (Moore v Hegeman, 92 NY 521, 524-525 [1883]; Thorp v Thorp, supra, 90 NY at 606; Van Voorhis v Brintnall, supra, 86 NY at 32-33; Matter of Bronislawa K. v Tadeusz K., 90 Misc 2d 183 [Fam Ct, Kings County 19773; Hilliard v Hilliard, 24 Misc 2d 861 [Sup Ct, Greene County I960]; cf. Cunningham v Cunningham, 206 NY 341 [1912].) In Fisher v Fisher (250 NY 313 [1929]), the New York divorced spouse, who was guilty of adultery and under then extant New York statutory law barred from remarrying during the lifetime of the innocent spouse, remarried on the high seas while the innocent spouse was still alive. The Court of Appeals recognized the marriage as valid because no law condemned such marriage performed out of state. (Cf. People v Ezeonu, 155 Misc 2d 344 [Sup Ct, Bronx County 1992] [polygamous marriage void in New York though valid where contracted].) Indeed, New York has recognized Canadian marriages that would be invalid in New York. (Donohue v Donohue, 63 Misc 111 [Sup Ct, Erie County 1909]; see Matter of Spector, 129 Misc 835 [Sur Ct, Erie County 1927].)
The expanding recognition of rights accorded homosexuals, lesbians and transsexuals (Lawrence v Texas, 539 US 558 [2003]; Matter of Jacob, 86 NY2d 651 [1995]; Braschi v Stahl Assoc. Co., 74 NY2d 201 [1989]; Matter of Brian L. v A.C.S., NYLJ, Mar. 1, 2007, at 21, col 3 [Fam Ct, NY County]; Buffong v Castle on the Hudson, NYLJ, Aug. 22, 2006, at 24, col 1 [Sup Ct, Westchester County]; Scheinkman, New York Law of Domestic Relations § 5.6 [11 West’s NY Prac Series 1996; 2007 Supp]; Laws of Westchester County ch 550 [Domestic Partnership Registry];[2] Civil Rights Law § 40-c [2]; Executive Law § 296 [1], [2], [2-a]; Education Law § 313 [1] [a]; Penal Law § 240.30 [3]; §§ 240.31, *814 485.05 [1]; Workers’ Compensation Law § 4; 18 NYCRR 421.16 [h] [2]) has led to requests by same-sex couples to marry. (Annotation, Marriage between Persons of Same-Sex — United States and Canadian Cases, 1 ALR Fed 2d 1 [2006]; 1 Foster, Freed and Brandes, Law and the Family New York § 4:35 [2d ed; 2007 Supp].) Massachusetts is the only state that currently allows same-sex marriages while Connecticut, New Jersey and Vermont permit civil unions that guarantee rights similar to heterosexual marriages (Ellen Barry, Eagerness and Some Resignation as Civil Union Law Takes Effect, New York Times, Feb. 20, 2007, at Bl, col 4; but see, 2 Antieau and Rich, Modern Constitutional Law § 28.16 [2d ed] [classifying Hawaii as allowing same-sex marriages by judicial fiat]).[3]
Congress has enacted the Defense of Marriage Act (DOMA) which protects any state from being required to give effect to same-sex marriage that is authorized by another state (1 USC § 7; 28 USC § 1738C). New York has not enacted legislation of similar import, although, as of 2003, 35 states had passed miniDOMA laws. (Langan v St. Vincent’s Hosp. of N.Y., 196 Misc 2d 440, 445 [Sup Ct, Nassau County 2003], revd 25 AD3d 90 [2d Dept 2005], appeal dismissed 6 NY3d 890 [2006].)[4]
*815 In Hernandez v Robles (7 NY3d 338 [2006]), the Court of Appeals, in a three-person majority, one concurrence and two dissents, held that New York’s legislative scheme prohibited marriage of same-sex couples. The majority opinion began as follows (7 NY3d at 356): “We hold that the New York Constitution does not compel recognition of marriages between members of the same sex. Whether such marriages should be recognized is a question to be addressed by the Legislature.” (Also see, 55 CJS, Marriage § 7.) The majority also observed (7 NY3d at 366): “We hold, in sum, that the Domestic Relations Law’s limitation of marriage to opposite-sex couples is not unconstitutional.”
In Langan v St. Vincent’s Hosp. of N.Y. (25 AD3d 90 [2d Dept 2005], appeal dismissed 6 NY3d 890 [2006]), the Appellate Division, Second Department, adhering to prior precedent (Matter of Cooper, 187 AD2d 128 [2d Dept 1993], appeal dismissed 82 NY2d 801 [1993]), held that a same-sex person is not a “spouse” within the meaning of section 5-4.1 of the Estates, Powers and Trusts Law so as to be able to bring an action for wrongful death. (Also see, Raum v Restaurant Assoc., 252 AD2d 369 [1st Dept 1998], appeal dismissed 92 NY2d 946 [1998].)
In the only reported decision in this state on point (Funderburke v New York State Dept. of Civ. Serv., 13 Misc 3d 284 [Sup Ct, Nassau County 2006]), the court construed Hernandez v Robles (7 NY3d 338 [2006], supra) as prohibiting recognition of a same-sex marriage performed in Canada so as to deny spousal health insurance. Counsel for defendants-intervenors is also counsel to plaintiff in Funderburke and has recently perfected an appeal in that case to the Appellate Division, Second Department. (Also see, National Pride at Work, Inc. v Governor of Mich., 274 Mich App 147, 732 NW2d 139 [2007] [holding DOMA-like amendment to Michigan Constitution prohibiting recognition of same-sex unions prevents such persons from receiving quasi-public employer-provided benefits].)
An unreported decision has reached the same result. (Martinez v Monroe Community Coll., Sup Ct, Monroe County, July 27, 2006, Index No. 433/05.) There, Justice Galloway held that pursuant to Hernandez v Robles (supra), “current New York policy does not authorize or recognize same-sex marriage” (slip op at 6; and at 8 [semble]) and, inasmuch as Canadian marriage *816 laws are inconsistent with New York public policy, comity would not be extended to recognize same-sex marriages in Canada at least for the purpose of mandating that a public employer provide “spousal” health coverage,to a same-sex partner of its employee. Martinez is instructive in that the issue of noncoverage pertained to 2005 while the subsequent collective bargaining agreement (2006) provided coverage to same-sex domestic partners. The court is informed that an appeal is pending (Attorney General’s mem of law at 27 n 13, in Godfrey v Hevesi, Sup Ct, Albany County, Nov. 10, 2006, Index No. 5896/06).[5]
Public policy means the law of the state as found in its constitution, statutes and judicial decisions. (Matter of Rhinelander, 290 NY 31, 36 [1943]; Matter of Board of Educ. of Ramapo Cent. School Dist. [Ramapo Teachers’ Assn.], NYLJ, June 11, 1992, at 28, col 3 [Sup Ct, Rockland County], affd 200 AD2d 62 [3d Dept 1994].) Hernandez v Robles (7 NY3d 338 [2006]) dealt with the subject of intrastate licensing of same-sex marriage, not with interstate or foreign recognition of such marriages. New York recognizes out-of-state marriages of heterosexuals that would have been invalid if made in New York if the marriage was valid where contracted even if the purpose was to evade New York law. (Van Voorhis v Brintnall, 86 NY 18 [1881], supra; Matter of Peart, 277 App Div 61 [1st Dept 1950]; Fernandes v Fernandes, 275 App Div 777 [2d Dept 1949].) Absent legislation or appellate court ruling that declares same-sex marriages out of state void here, though valid there, there is no positive law to interdict recognition of the marriage. (Matter of May, supra, 305 NY at 493; Fisher v Fisher, 250 NY 313 [1929], supra; see, Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 5, at 21-23.) I am not bound by the holdings of courts of coordinate jurisdiction (Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984]; Zagrosik v New York State Div. of Hous. & Community Renewal, 12 Misc 3d 1076 [Sup Ct, NY County 2006]) and I am not persuaded by the reasoning in Funderburke (supra) and Martinez (supra) that the Court of Appeals in Hernandez v Robles (7 NY3d 338 [2006], supra) changed the law with respect to comity (19A NY Jur 2d, Conflict of Laws § 11) regarding recognition of *817 out-of-state or foreign country marriages valid where contracted. Comity is a doctrine of convenience to be applied in accordance with public policy taking into account the attitudes of the community. (Ehrlich-Bober & Co. v University of Houston, 49 NY2d 574, 580 [1980]; Russian Socialist Federated Soviet Republic v Cibrario, 235 NY 255, 258 [1923].) By way of analogy, comity has been extended to recognize foreign country divorces of New York residents on grounds not available in this state. (Rosenstiel v Rosenstiel, 16 NY2d 64 [1965]; Note, 32 Brook L Rev 200 [1965].)
It is clear that there has been change in this state concerning the rights of same-sex persons as evidenced in Westchester county by virtue of the Domestic Partnership Registry and collective bargaining regarding same-sex partners’ health benefits, and in other areas such as adoption rights (Matter of Jacob, 86 NY2d 651 [1995], supra), the definition of family for tenancy purposes (Braschi v Stahl Assoc. Co., 74 NY2d 201 [1989], supra), and employment discrimination claims by reason of sexual orientation (Buffong v Castle on the Hudson, NYLJ, Aug. 22, 2006, at 24, col 1 [Sup Ct, Westchester County], supra), as demonstrated by the opinions of the State Comptroller and Attorney General with respect to same-sex marriages and state retirement funds. (2004 Ops Atty Gen No. I 2004-1; Letter from George S. King, Counsel to Retirement System, to Mark E. Daigneault, member of New York State and Local Retirement System [Oct. 8, 2004], available at <http://nysosc3.osc.state. ny.us/press/releases/sept06/marriageopinion.pdf>, cached at <http://www.courts.state.ny.us/reporter/webdocs/marriageopinion.pdfx)
Accordingly, the court concludes that the first cause of action is without merit as no illegality has been shown.
Article IX, § 2 (c) of the State Constitution and section 10 (1) (i) of the Municipal Home Rule Law empowers local governments, like the county, to adopt “laws” not inconsistent with the State Constitution or any general law. Plaintiffs contend that the executive order in issue is in the nature of legislation and beyond defendant’s powers. Defendants urge that the executive order is not legislation but merely implementation of policy and since no “law” has been enacted, the second cause of action must be dismissed.
“Rose is a rose is a rose is a rose.” (Gertrude Stein, Bartlett’s Familiar Quotations, at 673 [17th ed 2002].) What is the subject executive order? If it is actually an executive order, it is an implementing directive, not a law, and, therefore, claims *818 predicated on alleged violation of the State Constitution or statute that themselves pertain to laws are not viable. (Clark v Cuomo, 66 NY2d 185 [1985]; Citizens Util. Bd. v State of New York, 267 AD2d 838 [3d Dept 1999], lv dismissed 94 NY2d 943 [2000], lv denied 95 NY2d 757 [2000].) If the executive order is tantamount to a law, it is invalid as in violation of our separation of powers doctrine. (Rapp v Carey, 44 NY2d 157 [1978].)
The court finds that the executive order is exactly that — a policy implementation device in accordance with the current and evolving state of law on recognition of same-sex marriages out of state. (Cf. 2A McQuillin, Law of Municipal Corporations §§ 10:6, 10:7 [3d ed]; Laws of Westchester County § 110.11 [5], [6].[6]) Therefore, there is no merit to the second cause of action.
Conclusion
Consequently, the plaintiffs’ motion for a preliminary injunction is denied. The rights of the parties are declared as follows: Executive Order No. 3 of 2006 is a valid exercise of the County Executive’s power, not an illegal act, and does not violate the State Constitution or the Municipal Home Rule Law.

. Defendant Spano also seeks dismissal of the taxpayers’ action for alleged deficiencies in the bond filed by plaintiffs. Since any deficiency may be cured nunc pro tunc (Matter of Schulz v De Santis, 218 AD2d 256, 259 [3d Dept 1996]), the court deems it unnecessary to resolve this issue.

. Westchester County has covered domestic partners of its employees under its health benefit plans for at least five years.

. The Attorney General for Rhode Island has ruled that a same-sex marriage performed in Massachusetts should be recognized in Rhode Island. (Katie Zezima, Rhode Island Steps Toward Recognizing Same-Sex Marriage, New York Times, Feb. 22, 2007, at A19, col 1.) In Gonzalez v Green (14 Misc 3d 641 [Sup Ct, NY County 2006]), it was held that since the Massachusetts legislation (Mass Gen Laws Ann, ch 207, § 11) provides that “[n]o marriage shall be contracted in this commonwealth by a party residing and intending to continue to reside in another jurisdiction if such marriage would be void if contracted in such other jurisdiction, and every marriage contracted in this commonwealth in violation hereof shall be null and void,” a marriage between same-sex New York domiciliaries in Massachusetts was null and void. The action for divorce was dismissed. Similarly, in Boura v Haskell (182 Misc 307 [Sup Ct, NY County 1943]), involving a Louisiana statute of like import, it was held that a marriage in Louisiana was null and void where it would have been void had it occurred in New York (under a former New York statute prohibiting a divorced party who committed adultery from remarrying without court permission). A New Jersey tax court held that New Jersey was not required to recognize a Canadian same-sex marriage or civil union in Vermont. (Hennefeld v Town of Montclair, 22 NJ Tax 166 [Tax Ct 2005].) Presumably, this case has been overruled by New Jersey’s recent legislation permitting civil unions, at least insofar as recognition is sought for a Vermont civil union.

. Defendant Spano claims that DOMA laws have been enacted in 40 states. (Raimondi affirmation, Jan. 26, 2007, at 11; defendant Spano’s memorandum of law in support of motion to dismiss amended complaint at 12.) The Journal News reports that 45 states have explicit bans against same-sex marriage. (Leah Rae, Traveling Photo Album Puts Human Touch to Fight for *815 Same-Sex Marriage, Journal News (Westchester County, NY), Feb. 24, 2007, at 1B.)

. The issue in Godfrey is similar to the one presented at bar except that suit is brought under section 123-b of the State Finance Law to preclude the State Comptroller from recognizing same-sex Canadian marriages for retirement purposes. The Attorney General filed a reply brief on January 18, 2007 and the matter is sub judice.

. Section 110.11 (5) and (6) empowers the County Executive to see that all county agencies perform their duties and that state law pertaining to county affairs be enforced.