OPINION OF THE COURT
Rosalyn H. Richter, J.
*927 The parties, a same-sex couple, were married in Massachusetts in a civil ceremony on August 26, 2005. At the time of their marriage, they were residents of New York. They have provided this court with a copy of their certificate of marriage which was recorded with a town clerk in Massachusetts.
Earlier this year, the parties filed for divorce in this court and an inquest on grounds was held. Although there was no opposition to the holding of the inquest, a question arose as to whether this court had jurisdiction to grant a divorce to the parties since they could not, as a same-sex couple, at the time of their marriage or now, get married in New York State. Because the question of subject matter jurisdiction cannot be waived or conferred on the court by consent and can be raised at any point in the proceeding (see generally Matter of Fry v Village of Tarrytown, 89 NY2d 714 [1997]; Moulden v White, 49 AD3d 1250 [4th Dept 2008]; Matter of Lorenzana v Arafiles, 297 AD2d 679 [2d Dept 2002]; Graham v New York City Hous. Auth., 224 AD2d 248 [1st Dept 1996]), the court requested briefing on this jurisdictional issue. The parties have submitted a joint memorandum of law requesting that this court grant a divorce in this matter once the ancillary issues of custody and finances are resolved.[1]
In Martinez v County of Monroe (50 AD3d 189 [4th Dept 2008], lv dismissed 10 NY3d 856 [2008]), the Appellate Division held that the recognition of a same-sex marriage solemnized abroad was not contrary to the public policy of this State even if the marriage could not be solemnized in New York. In Martinez, the parties had been married in Canada and were seeking to have their marriage recognized here for the purpose of receiving spousal health benefits. As the Martinez court held, “[I]f a marriage is valid in the place where it was entered, fit is to be recognized as such in the courts of this State, unless contrary to the prohibitions of natural law or the express prohibitions of a statute.’ ” (Martinez, 50 AD3d at 191, quoting Moore v Hegeman, 92 NY 521, 524 [1883].) It is undisputed that the New York State legislature has not enacted any statute that would prohibit recognition of a same-sex marriage from another jurisdiction, nor is there any constitutional amendment barring recognition of such marriages. Thus, there is no positive law that would bar granting of a divorce in this case. Moreover, as the Martinez decision correctly notes, the natural law exception “has generally been limited to marriages involving polygamy or *928 incest or marriages ‘offensive to the public sense of morality to a degree regarded generally with abhorrence.’ ” (50 AD3d at 192, quoting Matter of May, 305 NY 486, 493 [1953] [upholding out-of-state marriage between uncle and niece].) Neither party cites any precedent nor has this court found any in this jurisdiction that would warrant inclusion of same-sex marriages from other jurisdictions in the very narrow public policy exception established by the existing case law.
A similar result was reached in Beth R. v Donna M. (19 Misc 3d 724 [Sup Ct, NY County 2008]), in which a judge of this court concluded in a thoroughly researched decision that the common-law doctrine of comity required recognition of a same-sex Canadian marriage for divorce purposes. In that decision, the court noted the numerous other types of marriages, including common-law marriages, that would not be valid if they occurred in New York, but which are recognized by New York if they are valid out-of-state marriages. Indeed, it is well settled that in deciding whether to recognize a marriage that occurred in a sister state, the critical question is whether the marriage would be valid where contracted. (See e.g. Matter of Catapano, 17 AD3d 672 [2d Dept 2005] [common-law marriage]; Katebi v Hooshiari, 288 AD2d 188 [2d Dept 2001] [common-law marriage]; Lancaster v 46 NYL Partners, 228 AD2d 133 [1st Dept 1996] [common-law marriage]; Fernandes v Fernandes, 275 App Div 777 [2d Dept 1949] [marriage by proxy].) This court concurs with the analysis in Beth R. and sees no reason to distinguish between the Canadian marriage in that case and the Massachusetts marriage here.
In Godfrey v Spano (15 Misc 3d 809 [Sup Ct, Westchester County 2007]), the trial court analyzed the principles of comity discussed herein and upheld an executive order issued by the Westchester County Executive that required departments and agencies in that County to recognize for benefit purposes same-sex marriages lawfully entered into outside the State of New York in the same manner as they recognize opposite-sex marriages. The court in Godfrey noted that New York has long recognized out-of-state marriages, valid where contracted, even when the purpose was to evade New York laws proscribing such marriages. It is important to note that one of the lower court cases whose reasoning was rejected by the Godfrey court, Funderburke v New York State Dept. of Civ. Serv. (13 Misc 3d 284 [Sup Ct, Nassau County 2006]), was dismissed as moot on appeal earlier this year based on a change in policy of the State *929 Department of Civil Service, as discussed below. (See Funderburke v New York State Dept. of Civ. Serv., 49 AD3d 809 [2d Dept 2008].) Thus, the Funderburke trial court decision, which was vacated by the Second Department decision, cannot be used as precedent and in any event, would not be binding on this court.[2]
In Gonzalez v Green (14 Misc 3d 641 [Sup Ct, NY County 2006]), a judge of this court, in a divorce action, interpreted the decision of the New York Court of Appeals in Hernandez v Robles (7 NY3d 338 [2006]) as prohibiting recognition of a same-sex Massachusetts marriage and declared the marriage null and void. This conclusion cannot be reconciled with the subsequent holding of the Fourth Department in Martinez, and in any event, this court respectfully declines to adopt this aspect of the holding in Gonzalez. In fact, the Fourth Department in Martinez explicitly concluded that Hernandez “holds merely that the New York State Constitution does not compel recognition of same-sex marriages solemnized in New York” (50 AD3d at 192), and it rejected the argument that Hernandez created a public policy exception to the recognition of valid foreign marriages. The analysis in Martinez is consistent with this court’s reading of the Hernandez case. The Court of Appeals in Hernandez relied on the core principle of legislative deference in concluding that New York’s Constitution did not mandate the granting of marriage licenses to same-sex couples in this state. The Court noted that it was not for them “to say whether same-sex marriage is right or wrong,” but rather it concluded that the issuance of licenses in this state to same-sex couples must be explicitly authorized by the legislature. (7 NY3d at 366.) There is nothing in the holding of Hernandez to suggest that the Court of Appeals intended to place same-sex marriages, validly authorized by other states or countries, into the narrow category of abhorrent conduct for which comity or full faith and credit should not apply in a divorce proceeding.
Indeed, recent developments lead to the conclusion that recognition of these marriages is, in fact, consistent with public policy. Following the issuance of the Martinez decision, Governor *930 David Paterson issued an executive directive to all state agency counsel asking them to conduct a review of agency policy statements and regulations to ensure that terms such as “spouse,” “husband” and “wife” are construed in a manner that encompasses legal same-sex marriages. The directive notes that “agencies that do not afford comity or full faith and credit to same-sex marriages that are legally performed in other jurisdictions could be subject to liability.” Furthermore, the State Department of Civil Service recently changed its policy regarding recognition of out-of-state and foreign same-sex marriages, and now requires public employers within its jurisdiction to provide spousal benefits to same-sex couples validly married in another jurisdiction.[3] Although ultimately the determination of whether the marriage at issue in this case should be accorded comity or full faith and credit is a legal issue, the political developments cited above support the conclusion that recognition of the parties’ out-of-state marriage would be consistent with the State’s current policy direction.
The decision of the Rhode Island Supreme Court in Chambers v Ormiston (935 A2d 956 [RI Sup Ct 2007]) is distinguishable from the instant case and in any event, would not be binding on this court. In Chambers, the court held that the Rhode Island Family Court, as a court of limited statutory jurisdiction, could not grant a divorce petition involving a same-sex couple who were married in Massachusetts. The Chambers court concluded that the concepts of full faith and credit or comity were not applicable because the Family Court as a court of limited jurisdiction could only exercise the powers granted to it by the legislature, which did not include the power to divorce a same-sex couple. The Supreme Court in New York is a court of general jurisdiction and has the power to grant a divorce even if the marriage could not lawfully occur in this state. Moreover, as the dissent in Chambers correctly notes, it is a well established principle that the validity of a marriage is determined by the *931 place where the marriage is celebrated. (See generally Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289 [1980]; Matter of May, 305 NY at 490; Van Voorhis v Brintnall, 86 NY 18 [1881].)
The remaining question is whether the parties’ marriage in Massachusetts is invalid by virtue of the fact that they were both nonresidents of Massachusetts at the time they were married. The parties, in the memorandum submitted to this court, assert that the answer to this question is controlled by a series of decisions from the Massachusetts courts concerning the rights of nonresident same-sex couples to marry in that state. In Cote-Whitacre v Department of Pub. Health (446 Mass 350, 844 NE2d 623 [2006]), the Supreme Judicial Court considered a challenge to a 1913 Massachusetts law (Mass Gen Laws Ann, ch 207, §§ 11, 12) which barred nonresidents from marrying in that state if the marriage would be void if contracted in their home state.[4] The Supreme Judicial Court upheld the law but remanded the matter back to the Superior Court to determine whether same-sex marriage was “prohibited” in New York.[5] The parties in Cote-Whitacre agreed that question would be determined by the resolution of the then-pending New York Court of Appeals decision in Hernandez v Robles (7 NY3d 338 [2006]).
Following the New York Court of Appeals ruling in Hernandez, the Massachusetts Superior Court, on remand, held that same-sex marriage was “prohibited” in New York. (Cote-Whitacre v Department of Pub. Health, 2006 WL 3208758, 2006 Mass Super LEXIS 670 [2006, Connolly, J.].) However, in a decision dated May 10, 2007, Justice Connolly issued a further order clarifying that “same-sex marriage only became ‘prohibited’ in New York on July 6, 2006,” which is the date of the Court of Appeals decision in Hernandez. (Cote-Whitacre v Department of Pub. Health, 2007 Mass Super LEXIS 149, *1 [2007, Connolly, J.].) Here, the parties were married on August 26, 2005, at a time when, according to the Massachusetts court, same-sex marriage was not yet “prohibited” in New York.[6] This court therefore concludes that the fact that the parties were *932 nonresidents of Massachusetts at the time they were married does not render the marriage invalid under then-existing Massachusetts law. (See Mass Gen Laws Ann, ch 207, §§ 11, 12.)[7]
The purpose of the full faith and credit provision of the Constitution and the doctrine of comity is to accord parties, especially in today’s mobile society, the ability to ensure that if they were married in another state, they can enforce the civil contract of marriage in New York. This court’s research and the cases cited by the parties provide no reason to carve out a unique exception for the parties here simply because they are of the same gender or because of their sexual orientation. As the Court of Appeals noted in Matter of Gotlib v Ratsutsky (83 NY2d 696, 700 [1994]), “[t]he comity doctrine is also pragmatically necessary to deal properly and fairly with the millions of relational and transactional decrees and determinations that would otherwise be put at risk, uncertainty and undoing in a world of different people, Nations and diverse views and policies.”
Accordingly, for all the reasons set forth above, no basis exists to decline to exercise jurisdiction over the dissolution of the parties’ Massachusetts marriage and this New York divorce action can proceed.

. There is no issue in this case concerning the standing of both parents because there was a second parent adoption.

. The appellate decisions in Matter of Langan v State Farm Fire & Cas. (48 AD3d 76 [3d Dept 2007]) and Langan v St. Vincent’s Hosp. of N.Y. (25 AD3d 90 [2d Dept 2005]) also do not bar the result reached here because those cases involved a Vermont civil union. In concluding the surviving partner was not a “surviving spouse” for purposes of the applicable New York law, both the Second and Third Departments noted that the parties had not married.

. In Golden v Paterson (NYLJ, Sept. 8, 2008, at 19, col 3, 2008 NY Misc LEXIS 5838 [Sup Ct, Bronx County 2008]), the court rejected a challenge to the legality of Governor Paterson’s executive directive. (See also Lewis v New York State Dept. of Civ. Serv., NYLJ, Mar. 18, 2008, at 28, col 1, 2008 NY Misc LEXIS 1623 [Sup Ct, Albany County 2008] [upholding civil service policy recognizing as spouses parties to same-sex marriages from other jurisdictions where such marriages are legal]; Godfrey v Hevesi, NYLJ, Sept. 18, 2007, at 28, col 1, 2007 NY Misc LEXIS 6589 [Sup Ct, Albany County 2007] [upholding policy of State Comptroller to recognize for retirement benefit purposes Canadian same-sex marriage].)

. In July of this year, the Governor of Massachusetts signed legislation repealing the 1913 law.

. The term “prohibited” is the term used by the Massachusetts courts in the Cote-Whitacre line of cases.

. The parties also point out that even if this court were to determine that the First Department decision in Hernandez v Robles (26 AD3d 98 [1st Dept 2005]) set the date for determining whether the parties’ marriage would have been “prohibited” in New York, the marriage here would be valid because it *932 occurred before the First Department opinion was issued on December 8, 2005.

. The Gonzalez decision, discussed earlier in this opinion, was issued before the 2007 decision on remand in Cote-Whitacre. This provides another reason to distinguish the Gonzalez case.