Mackoff v Bluemke-Mackoff (2023 NY Slip Op 05721)

Mackoff v Bluemke-Mackoff

2023 NY Slip Op 05721

Decided on November 15, 2023

Appellate Division, Second Department

Ford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 15, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
PAUL WOOTEN
WILLIAM G. FORD
BARRY E. WARHIT, JJ.

2021-02098
 (Index No. 382/19)

[*1]Robin Mackoff, respondent,
v
Linda Bluemke-Mackoff, appellant.

APPEAL by the defendant, in an action for a divorce and ancillary relief, from an order of the Supreme Court (John J. Leo, J.), dated March 10, 2021, and entered in Suffolk County. The order denied the defendant's motion for leave to amend her answer.

Michael B. Schulman & Associates, P.C., Melville, NY (Danielle Sican and Stanford Bankston of counsel), for appellant.
Gilbert L. Balanoff, P.C., Garden City, NY, for respondent.

FORD, J.

OPINION & ORDER
The issue presented on this appeal, apparently an issue of first impression for an appellate court in this State, is whether the Supreme Court improvidently exercised its discretion in denying the defendant's motion for leave to amend her answer to change the date of the parties' marriage from the date of their civil marriage ceremony, which occurred after the passage of the Marriage Equality Act, to the date of the parties' religious marriage ceremony, which occurred six years prior to the passage of the Marriage Equality Act. For the reasons set forth below, we determine that the defendant's request for leave to amend her answer was not prejudicial to the plaintiff, palpably insufficient, or patently devoid of merit, and, accordingly, her motion for such relief should have been granted.
I. Relevant Facts
On July 21, 2005, in New York City, the plaintiff, Robin Mackoff, and the defendant, Linda Bluemke-Mackoff, participated in a traditional Jewish marriage ceremony that was performed and solemnized by a rabbi. The ceremony was performed under a chuppah, the parties signed a Ketubah, and the event was attended by approximately 100 guests. It is undisputed that the parties did not obtain a marriage license for this ceremony since, at the time, New York State did not offer marriage licenses to same-sex couples or recognize same-sex marriages.
After this ceremony, the parties continued living together and, according to the defendant, held themselves out as spouses. In July 2010, the plaintiff officially changed her name from Robin Cindy Mackoff to Robin Cindy Bluemke-Mackoff.
In June 2011, New York State enacted the Marriage Equality Act (hereinafter the MEA), which authorized same-sex couples to enter into civil marriages in New York State. On July 28, 2011, four days after the MEA went into effect, the parties obtained a New York State marriage license and were married in a civil ceremony.
On January 23, 2019, the plaintiff commenced this action for a divorce and ancillary relief. In her complaint, the plaintiff claimed that the parties were married on July 28, 2011. On May 15, 2019, the defendant filed an answer, which did not refute the July 28, 2011 marriage date. [*2]The defendant was subsequently awarded certain pendente lite relief, including temporary spousal maintenance.
On December 10, 2020, the defendant moved for leave to amend her answer to reflect that the parties were married on July 21, 2005, instead of July 28, 2011. The plaintiff opposed the motion. In an order dated March 10, 2021, the Supreme Court denied the defendant's motion, determining that the amendment would be prejudicial to the plaintiff in light of the amount of time that had elapsed and the pendente lite relief previously granted. The court also determined that the amendment lacked merit because the MEA did not confer validity to a same-sex marriage conducted prior to its enactment. The defendant appeals.
II. Valid Marriages in New York State
"Marriage, so far as its validity in law is concerned, continues to be a civil contract,
to which the consent of parties capable in law of making a contract is essential" (Domestic Relations Law § 10). Generally, it is necessary for all persons intended to be married in New York State to obtain a marriage license and deliver said license, within 60 days, to the person who is to officiate the marriage ceremony (see id. § 13). Further, no marriage shall be valid unless solemnized (see id. § 11). No particular form or ceremony is required when a marriage is solemnized, but the parties must solemnly declare in the presence of a clergyman, magistrate, or one-day marriage officiant, and the attending witness or witnesses that they take each other as spouses (see id. § 12). At least one witness, aside from a clergyman, magistrate, or one-day marriage officiant, is required (see id.).
A marriage is valid if not void or voidable. The Domestic Relations Law specifically defines void marriages as those that are incestuous (see id. § 5), or where one of the parties has a living spouse and such former marriage has not been annulled or dissolved (see id. § 6). A marriage is voidable if a party to the marriage (1) is under the age of legal consent; (2) is incapable of consenting to a marriage for want of understanding; (3) is incapable of entering into the married state from physical cause; (4) has consented by reason of force, duress, or fraud; or (5) has been incurably mentally ill for a period of five years or more (see id. § 7). "While the Domestic Relations Law deems it necessary for all persons intending to be married to obtain a marriage license, a marriage is not void for the failure to obtain a marriage license if the marriage is solemnized" (Yusupov v Baraev, 197 AD3d 538, 539 [citation omitted]; see Bernstein v Benchemoun, 216 AD3d 893, 894; Matter of Farraj, 72 AD3d 1082, 1083).
III. The MEA
Prior to the passage of the MEA, New York's statutory law "clearly limit[ed] marriage to opposite-sex couples" (Hernandez v Robles, 7 NY3d 338, 357, abrogated by Obergefell v Hodges, 576 US 644). The MEA was signed into law on June 24, 2011, and went into effect 30 days later on July 24, 2011 (see L 2011, ch 95, § 6). In relevant part, this law amended the Domestic Relations Law to extend the right to marry to parties of the same sex (see Domestic Relations Law § 10-a). The amendments state, inter alia, that "[a] marriage that is otherwise valid shall be valid regardless of whether the parties to the marriage are of the same or different sex" (id. § 10-a[1]) and that "[n]o government treatment or legal status, effect, right, benefit, privilege, protection or responsibility relating to marriage . . . shall differ based on the parties to the marriage being or having been of the same sex rather than a different sex" (id. § 10-a[2]). The MEA set forth that no application for a marriage license would be denied on the ground that the parties were of the same, or different, sex (see id. § 13).
The bill's text explains the legislative intent of the amendments, stating,
"Marriage is a fundamental human right. Same-sex couples should have the same access as others to the protections, responsibilities, rights, obligations, and benefits of civil marriage. Stable family relationships help build a stronger society. For the welfare of the community and in fairness to all New Yorkers, this act formally recognizes otherwise-valid marriages without regard to whether the parties are of the same or different sex.
It is the intent of the legislature that the marriages of same-sex and different-sex couples be treated equally in all respects under the law" (L 2011, ch 95, § 2 [emphasis added]).
In a letter to the New York State Assembly requesting the immediate consideration of this bill, the Governor's counsel wrote that "[t]he continued delay of the passage of this bill would deny over 50,000 same-sex couples in New York critical protections currently afforded to different-sex couples, including hospital visitation, inheritance and pension benefits" (Letter to the Assembly, Bill [*3]Jacket, L 2011, ch 95 at 5).
IV. Retroactive Application of Statutory Enactments
"Amendments are presumed to have prospective application unless the Legislature's
preference for retroactivity is explicitly stated or clearly indicated. However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [citation omitted]). A remedial statute "is one which is 'designed to correct imperfections in prior law, by generally giving relief to the aggrieved party'" (Matter of Mia S. [Michelle C.], 212 AD3d 17, 22, quoting Nelson v HSBC Bank USA, 87 AD3d 995, 998). "Classifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 321), so "the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal" (Matter of OnBank & Trust Co., 90 NY2d 725, 730 [internal quotation marks omitted]). Other factors courts should consider when determining if a statutory amendment should be applied retroactively include "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d at 122).
Here, the defendant argues that the MEA should be applied retroactively, and, if the MEA is applied retroactively, that the parties' solemnized religious ceremony in 2005 created an "otherwise valid marriage" that should now be recognized by the State of New York, regardless of the date of the parties' subsequent marriage license.
V. Analysis
At this stage in the litigation, we are tasked only with determining whether the defendant should be permitted to amend her answer to make the claim that the date of the parties' marriage was July 21, 2005, not July 28, 2011. "In the absence of prejudice or surprise to the opposing party, a motion for leave to amend the [pleadings] pursuant to CPLR 3025(b) should be freely granted unless the proposed amendment is 'palpably insufficient' to state a cause of action or is patently devoid of merit" (Scofield v DeGroodt, 54 AD3d 1017, 1018, quoting Lucido v Mancuso, 49 AD3d 220, 229). The Supreme Court determined that the defendant's proposed amendment was both patently devoid of merit and prejudicial to the plaintiff, which the defendant refutes. Accordingly, we review the merits of the defendant's proposed amendment and its potential for prejudice in turn.
a. Merits
It is undisputed that the parties' religious ceremony was not recognized as a legal marriage by the State of New York in 2005 (see Hernandez v Robles, 7 NY3d at 357, abrogated by Obergefell v Hodges, 576 US 644). However, this does not mean that the defendant's proposed amendment is palpably insufficient or patently devoid of merit.
The parties participated in a religious marriage ceremony in 2005 that was solemnized by a rabbi, despite the fact that they did not have a valid marriage license. The law is clear that, but for the fact that the parties are two women, their marriage would have been recognized as valid, despite their failure to obtain a marriage license (see Bernstein v Benchemoun, 216 AD3d at 894; Yusupov v Baraev, 197 AD3d at 539; Matter of Farraj, 72 AD3d at 1083), and that the date of the marriage for equitable distribution purposes would have been the date of the religious ceremony, not the date that the parties eventually obtained their marriage license (see Jayaram v Jayaram, 205 AD3d 612, 613). Further, there are no allegations that the parties' relationship was void or voidable for any of the enumerated, specific reasons set forth in the Domestic Relations Law. Therefore, there is nothing in the record that suggests that the parties' religious marriage was not "otherwise valid" prior to the enactment of the MEA.
The question then becomes whether there is a compelling argument that the MEA should be applied retroactively to marriages that were not recognized by the State of New York prior to the enactment of the MEA, but that would have been "otherwise valid" but for the sex of the parties. The MEA contains no express language mandating retroactive application. However, the stated legislative intent of the MEA, which is to provide equal treatment under the law to all persons married in New York (L 2011, ch 95, § 2) by making the formerly gender specific marriage provisions in the Domestic Relations Law gender neutral (Domestic Relations Law § 10-a), indicates that it is a remedial statute, and that its statutory amendments are eligible for retroactive application.
"The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness" (Loving v Virginia, 388 US 1, 12). As such, the right to marry is protected by the United States Constitution (see Obergefell v Hodges, 576 US at 664). Here, the MEA acknowledged marriage as a "fundamental . . . right," and indicated that its purpose was to afford same-sex couples equal treatment under the law (L 2011, ch 95). Accordingly, the MEA was created to effectuate a beneficial purpose—namely, to protect the fundamental right of all New Yorkers to marry whomever they choose—and was designed to correct imperfections in the prior law by granting relief (see Matter of Mia S. [Michelle C.], 212 AD3d at 22). Furthermore, while the law allowed for a 30-day window before going into effect, the Governor's office conveyed the urgency of the immediate consideration of the bill to the Assembly to afford "critical protections" to same-sex couples (Letter to the Assembly, Bill Jacket, L 2011, ch 95 at 5).
The MEA codified the recognition by New York courts of valid, out-of-state same-sex marriages entered into prior to its passage, without the need for the parties to obtain a newly valid New York marriage license (see L 2011, ch 95; see also C.M. v C.C., 21 Misc 3d 926 [Sup Ct. NY County] [recognition of a valid, out-of-state same sex-marriage prior to the passage of the MEA, for the purposes of establishing jurisdiction for divorce]). The New York State Department of Taxation and Finance also permitted such couples to amend their tax returns filed prior to the MEA to revise their filing status to "married" (see NY St Dept of Taxation & Fin Tech Mem No. TSB-M-13[5]I, [10]M). When considering the treatment of couples married outside of New York State, the legislative history of the MEA, and the constitutional protections afforded to the right to marry, there is a colorable claim here that the MEA should be applied retroactively to recognize the parties' 2005 religious marriage. As such, we find that the defendant's proposed amendment is neither palpably insufficient nor patently devoid of merit.
b. Prejudice
Regarding a motion for leave to amend, "'[t]he burden of establishing prejudice is on the party opposing the amendment'" (R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d 685, 687, quoting Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411). Generally, "[d]elay alone is insufficient to bar an amendment to the pleading" (R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d at 687). Instead, "'[i]t must be lateness coupled with significant prejudice to the other side'" (id., quoting Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959). Further, prejudice "'is not found in the mere exposure of the defendant to greater liability'" (R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d at 687, quoting Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23). Rather, the opposing party must demonstrate "'some indication'" that it "'has been hindered in the preparation of his [or her] case or has been prevented from taking some measure in support of his [or her] position'" (R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d at 687, quoting Loomis v Civetta Corinno Constr. Corp., 54 NY2d at 23; see Wall St. Mtge. Bankers, Ltd. v Berquin, 213 AD3d 972, 976).
Here, contrary to the determination of the Supreme Court, the plaintiff failed to establish that the defendant's proposed amendment was prejudicial to her in such a way that the defendant's motion for leave to amend her answer should be denied. Neither the length of time between the defendant's original answer and her motion for leave to amend, nor the fact that the amendment may affect the plaintiff's maintenance and equitable distribution obligations, are sufficient to establish prejudice to the plaintiff (see R & G Brenner Income Tax Consultants v Gilmartin, 166 AD3d at 687).
VI. Conclusion
Accordingly, the order is reversed, on the law and in the exercise of discretion, and the defendant's motion for leave to amend her answer is granted.
BARROS, J.P., WOOTEN and WARHIT, JJ., concur.
ORDERED that the order is reversed, on the law and in the exercise of discretion, with costs, and the defendant's motion for leave to amend her answer is granted.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court