*521 OPINION OF THE COURT
Sam D. Walker, J.
The following opinion addresses issues raised by the parties in connection with motion sequence Nos. 1 and 2. Motion sequence No. 1 concerns plaintiff application for pendente lite relief, including an order directing that the defendant pay the mortgage, taxes, insurance and all carrying charges on the residence, utilities and maintenance of the property, and automobile expenses; an order granting plaintiff exclusive use and occupancy of the residence; an appraisal of the defendant’s pension, the residence and other retirement benefits; an order of interim attorney fees; an order that defendant pay plaintiff pendente lite maintenance; unreimbursed medical and dental expenses; an order that defendant maintain adequate life insurance naming plaintiff beneficiary thereof; and an order restraining defendant from disposing of any assets or property or from encumbering any asset other than that necessary in the ordinary course of business. Motion sequence No. 2 is defendant’s pre-answer motion to dismiss the complaint for divorce based on lack of subject matter jurisdiction and failure to state a valid cause of action.
Plaintiff B.S. and defendant EB. reside together in a single-family residence in Yonkers, New York. They have lived together for over 14 years and in 1994 they both participated in a Buddhist “marriage” ceremony. In October 2003 the parties entered into a “civil union” in the State of Vermont. Plaintiff by summons with notice and verified complaint commenced an action in Westchester County Supreme Court seeking dissolution of “the marriage between the parties” on Domestic Relations Law § 170 (1) grounds of cruel and inhuman treatment.
Plaintiff alleges that defendant is a self-employed artist and receives income in excess of $150,000 per year from family trusts. Plaintiff states that she has a disability that permits her to perform only part-time work on a sporadic basis. She is currently employed as a data collection associate with only negligible earnings and receives disability benefits $1,306 per month. Plaintiff further states that throughout the relationship defendant paid virtually all the household bills and covered the cost of travel and entertainment. Plaintiff contributed as she was able to and devoted herself to promoting defendant’s art, maintaining the household and caring for their dogs. In addition, plaintiff alleges that the house the parties reside in was titled in the name of a trust defendant established for plaintiff s benefit.
*522 Plaintiff alleges that during the course of their relationship, defendant became an alcoholic and on numerous occasions became abusive both verbally and physically towards plaintiff. Plaintiff states that defendant began an intimate relationship with another woman and in October 2008 defendant told plaintiff that she wanted to divorce and wanted plaintiff to move out of the house.
On March 30, 2009 defendant had plaintiff served with an eviction notice that alleged plaintiff was a “tenant at will” and demanded that plaintiff vacate the premises in Yonkers, New York on or before May 8, 2009.[1] Plaintiff states that defendant was intoxicated at the time plaintiff was served with the termination notice and that defendant yelled and cursed at plaintiff. As plaintiff attempted to retreat into a bedroom, defendant forced her way into the room, grabbed plaintiff in a headlock and tried to take plaintiffs cell phone from her hand to prevent her from calling for help. On April 2, 2009 plaintiff filed a petition in Westchester County Family Court alleging a family offense. On the return date of the family offense petition, defendant appeared in Family Court in Yonkers and consented to the issuance of a permanent order of protection. The order contained “refrain from”[2] but no “stay away” provisions, and required that the defendant/respondent “not use, possess or be under the influence of alcohol, or any illegal drugs or controlled substance in the home.”
Plaintiff then commenced this action seeking a divorce from defendant. By order to show cause for pendente lite relief, plaintiff sought an order directing defendant to pay the mortgage payments, real estate taxes, insurance, all carrying charges, utilities and other expenses associated with maintaining the parties’ residence. Plaintiff also sought exclusive use and occupancy of the residence, appraisals of the residence and of defendant’s pension and retirement benefits, interim counsel fees, and for defendant to pay to plaintiff a reasonable amount of pendente lite maintenance.
Defendant has appeared in this action and moved to dismiss plaintiffs complaint for lack of subject matter jurisdiction and *523 failure to state a valid cause of action. Defendant does not deny the 14-year relationship with plaintiff, the New Mexico “marriage” ceremony or that the parties entered into a civil union in Vermont. Defendant instead characterizes plaintiffs action as a frivolous contrivance in order to attempt to steal defendant’s real and personal property and to avoid her eviction from defendant’s home. She states that plaintiff has no legal rights to any of defendant’s property and that plaintiff has not contributed anything to defendant’s property. In addition, defendant maintains that as the parties are not legally “married” any relationship she has with any other person is not adultery but rather “my own business.”
Defendant states in her motion to dismiss that New York does not recognize same-sex marriage. Defendant also argues that as there is no valid out-of-state marriage entered into by the parties that New York could recognize as a matter of comity, plaintiff’s complaint must be dismissed. Defendant also maintains that the parties’ Vermont civil union is void and unenforceable. Defendant points to Vermont Statutes Annotated, title 15, § 1202, which is the statutory authority for civil unions established in Vermont. The statute provides that for a civil union to be valid, the parties may not be a party to another civil union or marriage. Defendant states that since plaintiff alleges a preexisting New Mexico “marriage,” their civil union in Vermont is null and void ah initio.
In an affidavit in support of her application for pendente lite relief and in opposition to defendant’s motion to dismiss, plaintiff states that while defendant denies the legitimacy of their union, defendant does not and cannot deny the promises made by defendant and the mutual commitments they made to each other. Plaintiff rejects any claim by defendant that she is plaintiffs landlord and furthermore points to the additional promises made by defendant that she would always provide for plaintiff and that plaintiff would always have a roof over her head. In counsel’s affirmation in opposition, plaintiff raises for the first time, an alternative relief which is for dissolution of the civil union entered into between the parties in the state of Vermont.
Defendant’s pre-answer motion to dismiss requires a determination of whether this court has subject matter jurisdiction to entertain the complaint herein. Plaintiff seeks a judgment of divorce from defendant; however, as defendant submits, and plaintiff cannot refute, the parties have not married in any *524 state or country that has a statute, ordinance or law that permits persons of the same sex to legally marry. Plaintiff states in her complaint that the parties were married in a religious ceremony in 1994. The ceremony took place in New Mexico, which like New York, has a gender neutral marriage statute,[3] but does not have any statute or law specifically permitting same-sex persons to marry. Defendant offers the case of Dunlap v Madrid (Sup Ct, NM, July 8, 2004, index No. 28730) as authority for the premise that New Mexico does not recognize same-sex marriages.[4] The opinion falls far short of reaching such a conclusion; however, what is clear is the Sandoval County Clerk was unsuccessful in her 2004 attempt to lift the lower court’s temporary injunction against the issuance of marriage licenses to same-sex couples. No marriage certificate has been offered to validate the parties “marriage,” which took place 10 years prior to the Sandoval County Clerk’s venture into this much debated and controversial issue of law, politics and constitutionally protected civil rights.
This court opines that, as the relationship endured and recognizing the legal infirmities of their New Mexico “marriage ceremony,” plaintiff and defendant felt the necessity of legitimizing their status by entering into a civil union in Vermont in 2003. The Vermont statute, effective July 1, 2000, provides that parties to a civil union be entitled to “the benefits and protections” and “be subject to the rights and responsibilities of spouses” (Vt Stat Ann, tit 15, § 1201 [2]). Civil union affords “all the same benefits, protections and responsibilities under law, whether they derive from statute, administrative or court rule, policy, common law or any other source of civil law, as are granted to spouses in a marriage” (Vt Stat Ann, tit 15, § 1204 [a]). A party to a civil union is included in the definition of the term spouse, family, immediate family, dependent, next of kin and “other terms that denote the spousal relationship, as *525 those terms are used throughout the law.” (Vt Stat Ann, tit 15, § 1204 [b].) Parties to a civil union are responsible for support “to the same degree and in the same manner as prescribed under the law for married persons” (Vt Stat Ann, tit 15, § 1204 [c]). Annulment, separation, divorce, child custody and support, property division and maintenance apply to parties to a civil union (Vt Stat Ann, tit 15, § 1204 [d]). The statute lists spousal legal benefits, protections and responsibilities including laws relating to title, tenure, descent and distribution, intestate succession, waiver of will, survivorship, or other incidents of the acquisition, ownership, or transfer, inter vivos or at death, of real or personal property, including ability to hold real and personal property as tenants by the entirety (Vt Stat Ann, tit 15, § 1204 [e] [1]). It includes standing to appear in an action for wrongful death, and addresses adoption law and proceedings. Parties to a civil union are protected from prohibitions based upon marital status, entitled to family leave benefits, public assistance benefits, and enjoy the marital communication privilege precluding compelled testimony regarding spousal communications (Vt Stat Ann, tit 15, § 1204 [e]).
The court notes with particular interest, that defendant does not deny the existence of a long-term, intimate relationship between plaintiff and defendant, a relationship which may have preceded the New Mexico ceremony. Defendant does, however, deny that she is legally obligated to provide for plaintiffs current or future security and support. Defendant’s position may not survive a properly pleaded complaint for dissolution of the Vermont civil union. In light of the current willingness of the New York courts (see Martinez v County of Monroe, 50 AD3d 189 [4th Dept 2008]) and of the State (Directive of Governor Paterson, memorandum from David Nocenti to all agency counsel re: Martinez decision on same-sex marriages, May 14, 2008) to recognize same-sex marriages validly contracted in other localities, as well as the growing sense that the New York State Senate will follow the State Assembly and allow same-sex marriage in New York,[5] this court is not convinced that defendant can or should avoid providing for certain necessary items of relief and support that plaintiff seeks herein.
However, before that issue can be explored, it is necessary to determine whether a civil union contracted in the state of Vermont may be dissolved by way of a matrimonial proceeding *526 commenced in New York. This presents a novel issue previously unaddressed by New York courts. The first consideration for this court is, as defendant argues, to determine whether the parties legally entered into a civil union in Vermont.
Defendant argues that because the “Certificate of Union” relied upon by plaintiff states, “The license authorizes the establishment of a civil union IN VERMONT ONLY of the above named parties by any person duly authorized to certify a civil union,” and because the parties herein did not reside in Vermont at the time they received the certificate, the civil union was void. Defendant argues that the language on the certificate is an express recognition that any rights attendant to a civil union remain within the geographic bounds of Vermont. Defendant’s argument is misplaced. The Vermont Supreme Court in Miller-Jenkins v Miller-Jenkins (180 Vt 441, 912 A2d 951 [2006]) determined that the Legislature fully expected that nonresidents would obtain civil unions, as it specifically provided that any town clerk in the state could issue a license to applicants “if neither is a resident of the state.” (18 Vt Stat Ann § 5160 [a].) The Vermont Supreme Court in Miller-Jenkins (supra), took judicial notice that Vermont was the first state to offer civil unions. Thus, if this court adopts defendant’s reasoning, no resident of another state who intended to remain a resident of that state could have validly entered into a Vermont civil union because no other state allowed civil unions at that time. The Vermont Supreme Court further found that where the Legislature intended to impose a residency requirement on couples in civil unions such as in the case of seeking a Vermont dissolution of the civil union, the Vermont Legislature stated so explicitly. (See 15 Vt Stat Ann § 1206 [“The dissolution of civil unions shall follow the same procedures . . . that are involved in the dissolution of marriage . . . , including any residency requirements”].) Furthermore, the Vermont Supreme Court noted that town clerks are required to provide civil union applicants with information to advise them “that Vermont residency may be required for dissolution of a civil union in Vermont.” (18 Vt Stat Ann § 5160 [f].) The absence of an explicit statement that residency would be required for Vermont civil union formation was taken by the Vermont Supreme Court as a strong indication that the Legislature intended no such requirement. (Miller-Jenkins, 180 Vt at 448, 912 A2d at 958.)
Defendant’s argument that their Vermont civil union was void or invalid due to the parties’ lack of Vermont residence *527 must fail. This court finds the parties’ civil union to be valid and properly contracted.
This court next considers whether there is statutory or legal authority to entertain the dissolution of the parties’ civil union. This legal scenario, while novel to New York, has been addressed by other jurisdictions. Migrating marriages and civil unions are increasingly the subject of litigation given the relatively few states that allow for same-sex marriages or civil unions.[6] Couples desirous yet unable to marry or have a civil union in their home state by necessity must avail themselves of the laws in other states. Marriage and civil union laws that permit them to legitimize their emotional and intimate relationships also permit the same-sex couple to enjoy numerous state and federal benefits, assume legal responsibilities and enjoy the protections that marriage and civil union offer to themselves, their partners and to their families.[7]
Individuals are now bringing these migrating marriages and civil unions to court. They seek divorces, dissolution and benefits. The dissolution cases present the classic conflict-of-laws problem. Parties from a jurisdiction that offers civil unions are now domiciled in another state and want to dissolve the relationship. Where, as is the case in New York, their current domicile does not provide for civil unions, the question becomes *528 whether the courts of the state will recognize the civil union for the purposes of dissolving it.
This court could not find any New York cases that address this precise issue; however, there are cases that offer guidance. In Langan v St. Vincent’s Hosp. of N.Y. (196 Misc 2d 440 [Sup Ct, Nassau County 2003]) the plaintiff had entered into a civil union with the decedent in Vermont. Recognizing that Vermont afforded the couple all of the benefits and obligations of marriage, Justice John E Dunne ruled that the plaintiff in that case was entitled to recognition as decedent’s “spouse” under New York’s wrongful death statute. Justice Dunne found that the plaintiff and decedent had a validly contracted civil union in Vermont, distinguishable from marriage only in title, and that it is impossible to justify, under equal protection principles, withholding the same recognition from a civil union that meets all the requirements of a marriage in New York but for the sexual orientation of its partners. Justice Dunne’s decision was overturned by the Second Department in Langan v St. Vincent’s Hosp. of N.Y. (25 AD3d 90 [2d Dept 2005]) which held that full faith and credit and comity theories did not apply to the analysis of Langan’s wrongful death action and that only the Legislature was empowered to act on the issue of same-sex marriages. The Second Department concluded that limiting the definition of marriage and laws pertaining to the marital relationship to only heterosexual couples, does not violate the Equal Protection Clause of either the federal or state constitution.
Massachusetts and Connecticut courts have also examined this issue. In Salucco v Alldredge (2004 WL 864459, 2004 Mass Super LEXIS 82 [2004]), a memorandum of decision was issued on Salucco’s uncontested “Complaint in Equity.” The Superior Court of Massachusetts ruled on plaintiffs request for a “dissolution” of a civil union entered into with defendant Alldredge in the State of Vermont. Considering the Full Faith and Credit Clause of the United States Constitution, the Defense of Marriage Act, the Vermont civil union statute, Massachusetts case law, and the Massachusetts Superior Court’s equity jurisdiction,. the plaintiffs request was granted and the civil union dissolved.[8]
In contrast, in 2002 the Appellate Court of Connecticut upheld the lower court’s dismissal of an action to dissolve a *529 Vermont civil union for lack of subject matter jurisdiction. In Rosengarten v Downes (71 Conn App 372, 802 A2d 170 [2002]) the Connecticut Appellate Court denied that Connecticut had a strong public policy in favor of same-sex civil unions. In fact the Appellate Court declared, “Connecticut has exercised the power to limit by law who may marry since the beginning of the colony.” (71 Conn App at 388, 802 A2d at 180.) Rejecting plaintiffs argument that the state’s antidiscrimination statutes prohibiting discrimination on the basis of sexual orientation evidenced a public policy to recognize same-sex marriages or civil unions, the Connecticut Appellate Court stated,
“General Statutes § 46a-81r, one of the sections of Title 46a on which the plaintiff relies, provides in relevant part: ‘Nothing in sections . . . 46a-81a to 46a-81q, inclusive . . . shall be . . . construed . . . (1) to mean the state of Connecticut condones homosexuality or bisexuality or any equivalent lifestyle ... (4) to authorize the recognition of or the right of marriage between persons of the same sex, or (5) to establish sexual orientation as a specific and separate cultural classification in society.’ ” (71 Conn App at 387, 802 A2d at 179.)
To place Connecticut’s judicial determinations with respect to same-sex marriage in a meaningful historical perspective, it is relevant to this court’s analysis that, just a few years following Rosengarten, a group of same-sex couples filed suit against the Department of Public Health and the Madison Town Clerk. The couples had applied for and been denied marriage licenses in Madison, Connecticut. In the suit, Kerrigan v State (49 Conn Supp 644, 909 A2d 89 [2006]), the plaintiffs sought a declaratory judgment that the Connecticut State Constitution prohibited any statute or common-law rule which would prevent otherwise qualified same-sex couples from marrying. While the case was pending the Connecticut Legislature passed a bill to create civil unions, affording same-sex couples many of the same rights and privileges available to opposite sex couples.[9] Both parties in Kerrigan then moved for summary judgment and the court granted summary judgment to the defendants, holding that the recently created civil union statute carried a strong
*530 presumption of constitutionality and finding no injury to the plaintiffs because, “[c]ivil union and marriage in Connecticut now share the same benefits, protections and responsibilities under law. The Connecticut constitution requires that there be equal protection and due process of law, not that there be equivalent nomenclature for such protection and process.” (49 Conn Supp at 667, 909 A2d at 102.) The plaintiffs appealed and on October 28, 2008 the Connecticut Supreme Court overturned the ban against same-sex marriage in Connecticut. (Kerrigan v Commissioner of Pub. Health, 289 Conn 135, 957 A2d 407 [2008].) The court ruled that the Equal Protection Clause of the Connecticut State Constitution required same-sex couples be given full access to marriage.
New York has not attempted to create any method by which same-sex partners can “legalize” their relationships. In the absence of such a rule, regulation or statute, this court has no precedent or authority to use as a standard to address plaintiffs application herein. New York’s judicial position with respect to permitting same-sex marriage is currently articulated in Hernandez v Robles (7 NY3d 338 [2006]). The majority of the New York Court of Appeals when considering Hernandez was unwilling[10] to extend to same-sex partners the right to a marriage celebrated in New York.
New York courts have recognized same-sex unions celebrated in a sister state or foreign country by application of the principle of full faith and credit. By extending full faith and credit to same-sex marriages from other jurisdictions, New York has recognized the same-sex spouse’s right to health and other insurance benefits in estate proceedings to qualify as a surviving spouse in the probate of an intestate estate and in divorce actions. (See Martinez v County of Monroe, 50 AD3d 189 [2008]; C.M. v C.C., 21 Misc 3d 926 [Sup Ct, NY County 2008]; Golden v Paterson, 23 Misc 3d 641 [Sup Ct, Bronx County]; Beth R. v Donna M., 19 Misc 3d 724 [Sup Ct, NY County 2008]; Godfrey v Hevesi, NYLJ, Sept. 18, 2007, col 1, at 28 [Sup Ct, Albany
*531 County]; Godfrey v Spano, 15 Misc 3d 809 [Sup Ct, Westchester County 2007, Lefkowitz, J.], affd 57 AD3d 941 [2d Dept 2008].) But the essential predicate for each judicial determination is the existence of a valid marriage.
As a matter of comity, New York courts will generally recognize out-of-state marriages, including common-law marriages, unless barred by positive law (statute) or natural law (incest, polygamy) or where the marriage is otherwise offensive to public policy. (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980]; Matter of May, 305 NY 486, 493 [1953]; Thorp v Thorp, 90 NY 602, 605 [1882]; Van Voorhis v Brintnall, 86 NY 18, 26 [1881]; Godfrey v Spano, 15 Misc 3d 809 [2007].) While falling short of placing a civil union on the same level as a valid marriage, New York has evidenced by executive and local orders a clear commitment to respect, uphold and protect parties to same-sex relationships and their families.[11]
The Vermont Legislature’s decision to create a civil union was a recognition of the right of same-sex couples to have some legal protections and some of the rights and responsibilities of opposite sex married people. (Vt Stat Ann, tit 15, § 1204.) But in enacting the statute Vermont also evidenced a reluctance to extend the right to “marry” to same-sex couples. The New York State Bar Association’s May 4, 2009 “Report and Recommendation on Marriage Rights for Same Sex Couples,” finds that the civil union model although intended to provide equality, in fact, has created a separate legal status with inherent disadvantages, unequal and uncertain legal rights and problems of portability crossing state lines.[12]
While it seems clear from the facts presented, that the parties to this action have a valid Vermont civil union, this
*532 court is constrained by judicial precedent and legislative inaction and therefore, cannot treat the civil union as a marriage.
The summons with notice states, “The nature of this action is to dissolve the marriage between the parties, on the grounds: Domestic Relations Law § 170 subd. (1) — cruel and inhuman treatment.” The verified complaint prays for an absolute divorce and for dissolution of a marriage, not for dissolution of the Vermont civil union. In the absence of a legal marriage performed in a jurisdiction that recognizes and provides for same, New York cannot grant plaintiff a divorce.
Although plaintiff and defendant reside in New York and do not meet the residency requirements to commence an action in Vermont to dissolve their union, this decision does not conclude plaintiff has no civil New York remedy. She must be afforded a legal avenue to accomplish the fair and equitable dissolution of her fractured relationship with defendant.
The Vermont Family Court has been granted jurisdiction to dissolve a civil union in that state. Vermont divorces are also heard by the Family Court. (See Vt Stat Ann, tit 15, § 1206.) The parties may have a properly pleaded complaint for dissolution of the civil union heard by the New York State Supreme Court which possesses the general jurisdiction to hear and decide all equitable civil actions including actions which may also be heard by the Family Court. (Judiciary Law § 140-b.)
Defendant’s motion to dismiss is granted without prejudice to plaintiffs right to file a verified complaint for dissolution of the Vermont civil union.
The stay of the eviction proceeding in Yonkers City Court under index No. SP2361-09 is continued for 60 days to permit plaintiff-respondent to interpose her defenses.
To the extent any relief requested in motions sequence Nos. 1 and 2 was not addressed by the court, it is hereby deemed denied.

. A holdover eviction proceeding was commenced by defendant in Yonkers City Court. To preserve the status quo while the motions were sub judice, this court issued a stay of the summary proceeding by order dated June 11, 2009.

. Respondent (the defendant herein) to refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, intimidation, criminal mischief, threats or any criminal offense against B.S. (the plaintiff herein).

. (See Hernandez v Robles, 7 Misc 3d 459 [2005] and NM Stat Annot § 40-1-1 [marriage is civil contract requiring consent of parties].)

. On February 20, 2004, Sandoval County Clerk Victoria Dunlap, began issuing marriage licenses to same-sex couples, claiming legal justification for her action because New Mexico marriage law does not mention gender. The above-captioned suit was filed against Dunlap in July 2004 by the New Mexico State attorney general, who had previously issued an opinion stating that the licenses were “invalid under state law.” A district court judge later issued a restraining order against Dunlap, prohibiting her from issuing any further licenses to same-sex couples. Dunlap then filed a motion with the state Supreme Court for permission to continue issuing the licenses, but on July 8, 2004, the New Mexico Supreme Court rejected the motion.

. 2009 NY Assembly A07732, approved on May 12, 2009 by a vote of 89 to 52.

. Issues marriage licenses to same-sex couples: Massachusetts, Connecticut, California (the California Supreme Court ruled on May 15/ 2008 that same-sex couples have the right to marry in California; Proposition 8, which limits marriage to one man and one woman, was passed on November 4, 2008; the decision was appealed; same-sex marriages performed before Proposition 8 was passed will remain valid, but samé-sex marriages are no longer performed in California), Iowa (the Iowa Supreme Court ruled on April 3, 2009 that same-sex couples have the right to marry in Iowa beginning April 24, 2009), Maine, Vermont (effective September 9, 2009), New Hampshire;
Recognizes same-sex marriages from other states: Rhode Island, New York, District of Columbia;
Allows civil unions, providing state-level spousal rights to same-sex couples: Connecticut, Vermont, New Jersey, New Hampshire;
Statewide law provides nearly all state-level spousal rights to unmarried couples (domestic partnerships): California, Oregon, Washington;
Statewide law provides some state-level spousal rights to unmarried couples (domestic partnerships): Hawaii, Maine, District of Columbia, Wisconsin (National Conference of State Legislators, Same-Sex Marriage, Civil Unions and Domestic Partnerships, http://www.ncsl.org/IssuesResearch/ HumanServices/SameSexMarriage/tabid/16430/Default.aspx [last visited July 12, 2009]).

. There are 2,462 rights and responsibilities that New York State and the federal government automatically bestow on married couples. (New York State Pride Agenda, http://www.prideagenda.org/IssuesExplained/MarriageandFamilyProtection [last visited July 12, 2009].)

. The parties had previously executed a separation agreement which provided for a comprehensive settlement and resolution of all other rights and responsibilities between them. Massachusetts Superior Court found the agreement to be fair and reasonable, free from fraud and coercion and so the agree *529 ment was approved and incorporated into and made part of the judgment of dissolution.

. “[W]herever in the general statutes . . . the term ‘marriage’ is used or defined, a civil union shall be included in such use or definition.” (Conn Gen Stat § 46b-38oo [eff Oct. 1, 2005].)

. Writing for the dissent, then Chief Judge Kaye rejected the majority’s holding that same-sex couples did not have a fundamental right to marry. Chief Judge Kaye found the US Supreme Court’s decision in Loving v Virginia (388 US 1 [1967]) particularly relevant to the equal protection analysis noting the popular sentiment against same-sex marriage was the equivalent of the historical justification of bans against interracial marriage. (Loving v Virginia overruled an antimiscegenation statute in Virginia. The decision was an important civil rights era precedent finding unconstitutional any state statute that prohibited individuals of different races from marrying.) “ [Fundamental rights, once recognized,” Chief Judge Kaye noted, “cannot be denied to particular groups on the ground that these groups have historically been denied those rights.” (Hernandez at 381.)

. See Directive of Governor Paterson, memorandum from David Nocenti to all agency counsel re: decision in same-sex marriages, May 14, 2008; Westchester County Executive Andrew Spano’s June 6, 2006 Executive Order No. 3 of 2006 orders all Westchester County agencies to “recognize same sex marriages lawfully entered into outside the State of New York in the same manner as they currently recognize opposite sex marriages” and the following cities publicly announced that they will recognize the validly performed out-of-state marriages of same-sex couples: City of Albany; City of Binghamton; City of Buffalo; Town of Brighton; City of Ithaca; Town of Chili; City of Rochester and Village of Nyack. (Lambda Legal, Marriage Recognition for Same Sex Couples in New York: Advances Outside of the Courtroom, http://www. lambdalegal.org/our-work/publications/facts-backgrounds/new-york-marriagerecognition-outside-courtroom.html [last visited July 17, 2009].)

. Report and Recommendation on Marriage Rights for Same-Sex Couples, the NYSBA Special Committee on LGBT People and the Law, May 4, 2009, at 131.