[928 NYS2d 97]

Audrey Juanita Dickerson, Appellant, v Sonya Denise Thompson, Respondent.

Third Department, July 21, 2011

## APPEARANCES OF COUNSEL

*Amy Schwartz, Empire Justice Center*, Rochester, and *Geri Pomerantz*, E. Greenbush, for appellant.

*Thomas W. Ude Jr., Lambda Legal Defense Fund, Inc.*, New York City, amicus curiae.

## OPINION OF THE COURT

PETERS, J.P.

Plaintiff and defendant, residents of New York, entered into a civil union in Vermont in April 2003. In November 2007, plaintiff, unable to obtain a dissolution of the civil union in Vermont due to that state's residency requirements (*see* Vt Stat Ann, tit 15, §§ 592, 1206), commenced the instant action for equitable and declaratory relief seeking a judgment dissolving the civil union and freeing her of all the rights and responsibilities incident to that union. Upon defendant's default, plaintiff moved for a judgment granting the requested relief. Supreme Court, sua sponte, dismissed the complaint for lack of subject matter jurisdiction. On appeal, we reversed and reinstated the complaint (73 AD3d 52 [2010] [hereinafter *Dickerson I*]), holding that the courts of this state may recognize the civil union

status of the parties as a matter of comity and that Supreme Court is vested with subject matter jurisdiction to adjudicate the dispute (*id.* at 54-56). We did not, however, reach the issue as to what relief, if any, could ultimately be afforded to the parties on the merits (*id.* at 56).

Upon remittal, Supreme Court granted that portion of plaintiff's motion seeking a declaration relieving the parties from all rights and obligations arising from the civil union, but denied that portion of the motion seeking a dissolution of the union.[1] Plaintiff appeals, and we now modify.

■ We disagree with Supreme Court's conclusion that, in the absence of any legislatively created mechanism in New York by which a court could grant the dissolution of a civil union entered into in another state, it was powerless to grant the requested relief. While plaintiff lacks a remedy at law, the dissolution of a civil union falls squarely within the scope of Supreme Court's broad equity jurisdiction.

As we noted in *Dickerson I*, the NY Constitution vests Supreme Court with "general original jurisdiction in law and equity" (NY Const, art VI, § 7 [a]). " 'The power of equity is as broad as equity and justice require' " (*Kaminsky v Kahn*, 23 AD2d 231, 237 [1965], quoting *London v Joslovitz*, 279 App Div 280, 282 [1952]; *see Maresca v Cuomo*, 64 NY2d 242, 252 [1984], *appeal dismissed* 474 US 802 [1985]; *Buteau v Biggar*, 65 AD2d 652, 653 [1978]). Indeed, "[t]he essence of equity jurisdiction has been the power . . . to [mold] each decree to the necessities of the particular case" (*State of New York v Barone*, 74 NY2d 332, 336 [1989] [internal quotation marks and citation omitted]). Thus, once a court of equity has obtained jurisdiction over the subject matter of the action, as Supreme Court had here, it has the power to dispose of all matters at issue and to grant complete relief in accordance with the equities of the case (*see Phillips v West Rockaway Land Co.*, 226 NY 507, 515 [1919]; *Madison Ave. Baptist Church v Baptist Church in Oliver St.*, 73 NY 82, 95 [1878]; *Matter of AT&T Info. Sys. v Donohue*, 113 AD2d 395, 400 [1985], *revd on other grounds* 68 NY2d 821 [1986]; *Kaminsky v Kahn*, 23 AD2d at 237). In other words, even in the absence of any direct grant of legislative power, Supreme Court has the "inherent authority . . . to fashion

---

1. Supreme Court also denied plaintiff's request for an order of protection against defendant. As plaintiff has not addressed that issue in her brief, we deem it to be abandoned (*see Deshields v Carey*, 69 AD3d 1191, 1192 n 1 [2010]; *Miller v Moore*, 68 AD3d 1325, 1326 n [2009]).

whatever remedies are required for the resolution of justiciable disputes and the protection of the rights of citizens," tempered only by our Constitution and statutes (*Matter of AT&T Info. Sys. v Donohue*, 113 AD2d at 400 [internal quotation marks and citation omitted]).

The exercise of Supreme Court's equitable powers to grant a dissolution of the civil union was clearly warranted here. Plaintiff is in need of a judicial remedy to dissolve her legal relationship with defendant created by the laws of Vermont.[2] Residency requirements prevent her from obtaining a dissolution of the civil union in Vermont, and the provisions of Domestic Relations Law § 170, which provide for divorce and dissolution of a marriage, are not applicable to this action since the parties did not enter into a marriage in Vermont.[3] Thus, absent Supreme Court's invocation of its equitable power to dissolve the civil union, there would be no court competent to provide plaintiff the requested relief and she would therefore be left without a remedy. A court of equity "withholds its remedies if the result would be unjust, but freely grants them to prevent injustice when the other courts are helpless" (*McClure v Leaycraft*, 183 NY 36, 41 [1905]; *see Matter of Eichner [Fox]*, 73 AD2d 431, 452 [1980]).

Here, the uncontested evidence submitted by plaintiff establishes that, during the course of the parties' relationship, defendant had subjected her to violent physical abuse on several occasions and was verbally abusive to both her and her autistic son on a daily basis. Defendant also stole from her, resulting in defendant's criminal conviction of grand larceny, and removed the license plates from plaintiff's vehicle to prevent her and her son from escaping defendant's abusive conduct. Furthermore, the parties have lived apart since April 2006 and plaintiff has alleged facts demonstrating that resumption of the civil union is not probable. Since plaintiff would be entitled to a dissolution of the civil union in Vermont but for that state's residency requirement (*see* Vt Stat Ann, tit 15, § 551 [3], [7]; §§ 592, 1206), we find that equity would be served by granting her the requested

---

2. We note that this case is uncontested and that there are no corresponding distribution, custody or support issues.

3. While this action was pending, the Legislature enacted the Marriage Equality Act, which permits marriage between persons of the same gender and provides that valid same-sex marriages entered into outside the state will be recognized in New York and treated the same as in-state marriages (L 2011, ch 95 [eff July 24, 2011]). We note that this legislation has no impact on the issues presented in this case.

relief and that Supreme Court erred in declining to invoke its equitable powers to do so.

Furthermore, notwithstanding Supreme Court's declaration freeing the parties from the rights and obligations flowing from the civil union, the fact remains that, in the absence of a judgment granting a dissolution, plaintiff and defendant continue to be interminably bound as partners to the union (*see* Vt Stat Ann, tit 15, §§ 591, 1206). Given this legal status, plaintiff is precluded from entering into another civil union or a marriage in Vermont (*see* Vt Stat Ann, tit 15, § 4), as well as analogous relationships in several other jurisdictions (*see e.g.* Cal Fam Code § 297 [b] [2]; § 299.2; Conn Gen Stat Ann § 46b-20 [4]; § 46b-20a; DC Code § 32-701 [3] [B], [C]; § 32-702 [a] [2], [3]; 750 Ill Comp Stat Ann 75/25 [2]; 75/60 [eff June 1, 2011]; Me Rev Stat Ann, tit 22, § 2710 [2] [C], [D]; NJ Stat Ann § 37:1-30 [a]; NH Rev Stat Ann §§ 457:2, 457:45, 457:46; Nev Rev Stat Ann § 122A.100 [2] [b]; § 122A.500; Or Rev Stat § 106.315 [1] [a]; Wash Rev Code § 26.60.030 [3]). Supreme Court's denial of the requested dissolution also bars the parties from enjoying the more limited protections available to domestic partners under certain locals laws of this state, including New York City's Domestic Partnership Law, which forbids parties to a civil union from entering into a domestic partnership with another (*see* Administrative Code of City of NY § 3-241). Moreover, the court's decision freeing the parties of all rights and obligations incident to the civil union, while refusing to grant a dissolution of the union, necessarily results in uncertainty and confusion regarding the precise nature of the parties' legal relationship, particularly with respect to the various rights that New York affords to parties to a civil union (*see generally Dickerson v Thompson*, 73 AD3d at 56). Notably, plaintiff's unaltered status as a partner to the civil union may even vest certain legal rights in defendant with respect to any child that plaintiff may subsequently bear (*see Miller-Jenkins v Miller-Jenkins*, 180 Vt 441, 912 A2d 951 [2006], *cert denied* 550 US 918 [2007] [holding that a child born by artificial insemination during a *valid legal civil union* to one partner of a civil union will be deemed the other partner's child under Vermont law for purposes of determining custodial rights following dissolution of the civil union]; *see also Debra H. v Janice R.*, 14 NY3d 576, 598-599 [2010], *cert denied* 562 US —, 131 S Ct 908 [2011] [finding that Debra H., who entered into a civil union with Janice R. prior to the birth of the latter's child by artificial insemination, is the

child's parent under Vermont law, and that New York will accord comity to Debra H.'s parentage status for the purpose of seeking visitation and custody in New York]). These chilling effects, both potential and actual, flowing from plaintiff's continued status as a partner to the civil union further support our conclusion that the exercise of the court's equitable power to dissolve the parties' civil union was warranted. Indeed, it would be patently incongruous for the courts of this state to render civil unions more durable than marriages.[4]

LAHTINEN, J. (concurring). Although we concur with the result, we respectfully write separately since we are not persuaded that "on the law" modification of Supreme Court's order is appropriate given the circumstances prevailing at the time Supreme Court issued its decision.[1]

This Court's earlier decision in the case made repeated reference to the circumscribed nature of its holding (73 AD3d 52, 53, 56 [2010] [characterizing at the outset the issue as "narrow," and later emphasizing that "our conclusion . . . does not in any way determine the ultimate question of what, if any, relief is available"]). Upon remittal, Supreme Court's equity jurisdiction was invoked. Equity, while certainly flexible, is not an unfenced field as "the limitations on the variety, flexibility and sweep of [equity's] potential application must be reflected in a proportionate, prudential discretion by the initial equity trial court and then by a discerning scrutiny, especially of the intermediate appellate court possessing coordinate authority in that respect" (*State of New York v Barone*, 74 NY2d 332, 336 [1989]; *see Lon-*

---

4. We note that, subsequent to our decision in *Dickerson I*, there have been several Supreme Court decisions that have granted the relief requested by plaintiff here (*see e.g. Anonymous v Anonymous*, Sup Ct, Monroe County, May 13, 2011, Bellini, J., index No. 2010/14286; *Anonymous v Anonymous*, Sup Ct, Erie County, May 3, 2011, Nowak, J., index No. SF2011-900220; *Anonymous v Anonymous*, Sup Ct, New York County, Mar. 21, 2011, Evans, J.; *J.R.H v P.R.M.*, Sup Ct, Tompkins County, Dec. 21, 2010, Mulvey, J., index No. 2010-0859; *Parker v Waronker*, 30 Misc 3d 917 [Sup Ct, Onondaga County 2010]; *Anonymous v Anonymous*, Sup Ct, Tompkins County, June 15, 2010, Mulvey, J., index No. 2010-0493; *see also B.S. v F.B.*, Sup Ct, Westchester County, Mar. 3, 2010, Walker, J., index No. 19624/09).

1. Supreme Court has discretion when, as here, exercising equity jurisdiction, and a reversal or modification of a discretionary determination "on the law" generally connotes a finding that the lower court abused its discretion (*see Notey v Darien Constr. Corp.*, 41 NY2d 1055, 1055-1056 [1977]; *Mann v Cooper Tire Co.*, 33 AD3d 24, 28-29 [2006], *lv denied* 7 NY3d 718 [2006]; *see also Matter of Red Hook/Gowanus Chamber of Commerce v New York City Bd. of Stds. & Appeals*, 5 NY3d 452, 463 [2005] [G.B. Smith, J., dissenting]).

*char v Thomas*, 517 US 314, 323 [1996] [cautioning that "to use each equity chancellor's conscience as a measure of equity . . . would be as arbitrary and uncertain as measuring distance by the length of each chancellor's foot"]; *see also Grupo Mexicano de Desarrollo, S.A. v Alliance Bond Fund, Inc.*, 527 US 308, 321 [1999] [indicating that an overly "expansive view of equity" is at odds with the fundamental precept that ours is a " 'government of laws, not of men' "]). The area of law in which Supreme Court was asked to exercise its equity power is one that has emerged in recent years and remains largely unsettled nationally, and, at the time of Supreme Court's decision, little relevant guidance had been provided by New York's Legislature.[2]

Simply stated, Supreme Court was faced with a narrow decision from this Court, it was using a power best applied cautiously, the area of law was emerging and unsettled and, at the time of its decision, the Legislature had not yet meaningfully acted in this area (*cf. Godfrey v Spano*, 13 NY3d 358, 377 [2009]). Under such circumstances, we are not persuaded that Supreme Court erred as a matter of law in the relief it crafted. While the majority speculates about possible hurdles remaining despite Supreme Court's declaration that the parties were "reliev[ed] [of] any and all rights and obligations arising from the [Vermont] civil union," it is equally feasible to speculate that this broad declaratory language would have been interpreted to cover most, if not all, of the concerns hypothesized by the majority.

Nevertheless, subsequent to Supreme Court's decision, the Legislature passed same-sex marriage legislation, reflecting an intent for judicial involvement in dissolving relationships of the nature implicated here. In addition, this Court can substitute its discretion for the discretionary determination of Supreme Court (*see State of New York v Barone*, 74 NY2d at 336; *Alliance Prop. Mgt. & Dev. v Andrews Ave. Equities*, 70 NY2d 831, 833 [1987]). In light of the recently passed legislation, we cannot

---

2. One thing that was clear in this area of law was that getting out of a civil union (or same-sex marriage) would not be hurdle-free for nonresidents of the jurisdiction granting such unions. Vermont's "Guide to Vermont Weddings and Civil Unions" specifically warned nonresidents in such regard (*see* Guide to Vermont Weddings and Civil Unions, http://www.vermont.com/weddings_civilunions.cfm [accessed June 27, 2011] ["It is easy to get a civil union in Vermont, but it may be hard to dissolve the civil union later"]), and cases from various jurisdictions reflected the difficulties (*see e.g. Chambers v Ormiston*, 935 A2d 956 [RI 2007]; *In re Marriage of J.B. & H.B.*, 326 SW3d 654 [Tex 2010]; *Kern v Taney*, 11 Pa D & C 5th 558 [2010]).

say that the majority's granting the relief of dissolving the civil union is inappropriate.

SPAIN and MᶜCARTHY, JJ., concur with PETERS, J.P.; LAHTINEN, J., concurs in a separate opinion in which MALONE JR., J., concurs.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for a default judgment granting her a dissolution of the parties' Vermont civil union; motion granted to that extent; and, as so modified, affirmed.