OPINION OF THE COURT
Richard A. Dollinger, J.
“I do”—a one-letter overused personal pronoun and two-letter auxiliary verb—is uttered in many contexts. Separated, even by a comma, the two words may be all but innocuous. When uttered as a response to a question in a certain context, the words marry a couple, not only to each other, but to a cascade of rights and responsibilities. In this matter, a couple was united in a civil union in Vermont, but lived the majority of their marriage in New York. Now, one spouse asks this court to distribute “civil union” assets by applying the equitable distribution principles of the New York Domestic Relations Law.
From one vantage point, this case represents an interstitial legal battle in the long running—and now largely concluded— battle over marriage equity in this nation. In the decade before the Supreme Court decision in Obergefell v Hodges (576 US —, 135 S Ct 2584 [2015]), states (with Vermont as the first) began to enact legislation permitting civil unions, a recognition of a state-sanctioned, marriage-like, economic relationship between same-sex couples.[1] Many couples—including the couple in this case—visited Vermont to enter such unions, then later married *404 in more marriage-friendly jurisdictions. When these couples then apply to the courts for dissolution of their marriage, the lingering question of their undissolved civil union—and whether New York recognizes property rights under the civil union—hangs over the process.
The facts here are undisputed. The parties in this action began their relationship in 2001.[2] In 2002, the couple moved to New York. Before moving, the defendant sold a house she owned in her own name in Indiana. In June 2003, they entered into a civil union in Vermont. At the time of their civil union, Vermont recognized such unions, and by statute, the parties acquired rights, under Vermont law, in property that they acquired thereafter. In 2004, the plaintiff purchased a home in Rochester, which she claims was purchased with her separate property. The plaintiff claims, without contradiction, that she used her own funds for the purchase, and that the defendant was not listed on the deed to the property. Importantly, the plaintiffs characterization of the funds used to purchase the property is the hinge on which this decision turns.[3] If the civil union created some form of joint property entitlement—“civil union property,” for want of a better description—then the defendant had some form of interest in both the income generated by the plaintiff after the civil union, and the subsequent purchase of the house. In 2006, the couple were married in Canada. Five years later, almost to the day, the plaintiff commenced this divorce action in New York seeking equitable distribution of the marital property. Thereafter, the defendant filed an action for divorce and a counterclaim for dissolution of the civil union.
The controversy arises because the defendant claims that this court must dissolve the civil union, and distribute any “civil union property” under Vermont law. The plaintiff rejects *405 that claim, arguing that the defendant has only acquired rights by virtue of the marriage in Canada, and hence, this court need not dissolve the civil union. Furthermore, according to the plaintiff, the defendant has only acquired rights in “marital property,” as defined by the New York Domestic Relations Law, which exists since the date of marriage and not before. As a result, the plaintiff argues that any property, acquired by either party in their own names after the date of the civil union, and before the date of marriage, is not marital property. When, after a preliminary conference, the parties could not resolve this dispute (and the conflict of law questions), both sides moved for summary judgment.
While the essential facts are undisputed, so too is most of the underlying law. In 2000, Vermont’s civil union statute granted property rights to participants in civil unions, legally equivalent to those rights extended to couples in marriage. (Vt Stat Ann, tit 15, § 1204 [d] [laws of “domestic relations . . . including property division . . . shall apply to parties to a civil union”].) The statute provided that the civil union bond could be dissolved by Vermont’s courts. Importantly, the preamble to the civil union statute expressly stated that “a system of civil unions does not bestow the status of civil marriage” (2000 Vt 65th Biennial Session, Pub Act 91, H 847, Legislative Findings, § 1 [10]). Vermont eventually interpreted this provision as extending to same-sex couples, the same rights and responsibilities as opposite-sex couples regarding child rearing (Miller-Jenkins v Miller-Jenkins, 189 Vt 518, 12 A3d 768 [2010]). In 2003, the couple before this court acquired, under Vermont law, “the same benefits, protections, and responsibilities” as granted to parties to a civil marriage. (189 Vt at 523, 12 A3d 777.) However, in 2003, the laws of Vermont did not recognize the parties’ civil union as a marriage. Thus, at the time this couple entered the civil union, Vermont did not recognize that union as a marriage.
Vermont later passed a Marriage Equality Act (MEA) which afforded legal status to same-sex marriages, and which also included within the definition of marriage “legally recognized unions of two people.” Pursuant to the Vermont statute, marriages and civil unions—after the MEA—are equivalent unions and can be dissolved by the Vermont courts. The Vermont Supreme Court has intoned that even if joined in a civil union, the property subject to distribution is referred to as the “marital estate” (DeLeonardis v Page, 188 Vt 94, 101 n 1, 998 *406 A2d 1072, 1076 n 1 [Vt 2010]). Based on these now-fully-evolved statutory principles, the defendant argues that this court should treat the 2003 civil union as the equivalent of marriage in New York—as she claims Vermont now would— and treat any property, acquired by either participant, as “marital property” from the date of the civil union. In essence, the defendant argues that the state in which the ceremony occurs defines the date of “union” and because Vermont declared the civil union in this case to be a marriage—albeit after the couple entered into the civil union—New York must treat the civil union as the date when “marital property” (under New York’s Domestic Relations Law) exists.
Before jumping into the heart of this debate, this court dispenses with the question of whether it has jurisdiction to dissolve the civil union. New York courts have recognized general equity jurisdiction to dissolve Vermont civil unions. In Dickerson v Thompson (88 AD3d 121 [3d Dept 2011]), the appeals court held that trial courts could dissolve civil unions under a trial court’s general equity jurisdiction. But, while authorizing this court to dissolve the union, the appeals court did not provide any guidance on what tools to invoke in deciding distribution of property acquired during the course of the civil union. (Id. at 124 n 2 [property distribution was uncontested in Dickerson v Thompson].) The Appellate Division cited a series of cases in which supreme court justices had dissolved civil unions. {Id. at 127 n 4.) In this case, the defendant specifically requests that relief. Under these circumstances, this court does have jurisdiction to dissolve this civil union, but that does not solve the property distribution dilemma. The court must decide whether it can distribute “civil union property” that is outside the scope of “marital property” as defined in the Domestic Relations Law. The mere fact that this court has the power to dissolve the civil union does not dictate that it must apply New York’s statutory rules to relief under the dissolution. In that respect, it is important to note that other New York courts have concluded that a civil union is not the equivalent of a marriage in New York. In Matter of Langan v State Farm Fire & Cas. (48 AD3d 76 [3d Dept 2007]) and Langan v St. Vincent’s Hosp. of N.Y. (25 AD3d 90 [2d Dept 2005]), the Second and Third Departments noted that the parties had not married and, therefore, the surviving partner was not a “surviving spouse” for purposes of the application of New York’s workers’ compensation laws. The Third Department *407 declined to apply comity and extend New York’s system of benefits to the civil union partner:
“While parties to a civil union may be spouses, and even legal spouses, in Vermont, New York is not required to extend to such parties all of the benefits extended to marital spouses. The extension of benefits entails a consideration of social and fiscal policy more appropriately left to the Legislature.” (Matter of Langan v State Farm Fire & Cas., 48 AD3d at 79.)
Cast in that light, this court considers “marital property” as defined by the legislature in the Domestic Relations Law as the linchpin on which New York’s entire system of marital property distribution rests. If the property is “marital,” the court can equitably distribute it. If not, the court has no jurisdiction to change title or ownership to it. Because of the central importance of creating an exact context in which courts could order a transfer to title to property, the legislature adopted a black line test for determining when “distributable property” existed in a marriage. The date of marriage—and no other date—is the time when “marital property” exists. Domestic Relations Law § 236 (B) (1) (c) defines marital property as all property acquired “during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action.” (Mesholam v Mesholam, 11 NY3d 24 [2008]; Cudar v Cudar, 98 AD3d 27, 35 [2d Dept 2012] [the crucial issue in deciding whether property is separate or marital is the date on which such property is acquired, i.e., either before or during the marriage].) The courts have decreed that the definition of marital property “should be construed broadly in order to give effect to the ‘economic partnership’ concept of the marriage relationship recognized in the statute.” (Price v Price, 69 NY2d 8, 15 [1986]; Ceravolo v DeSantis, 125 AD3d 113, 116 [3d Dept 2015] [“the economic partnership created by marriage cannot exist until marriage has occurred”]; Gately v Gately, 113 AD3d 1093 [4th Dept 2014] [“economic partnership” concept of the marriage relationship]; Scher v Scher, 91 AD3d 842, 845 [2d Dept 2012] [the rule that the definition of marital property is to be broadly construed, given the principle that a marriage is an economic partnership].) The Equitable Distribution Law recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time *408 of acquisition. (Fields v Fields, 15 NY3d 158, 162 [2010]; O’Brien v O’Brien, 66 NY2d 576, 583 [1985].) Therefore, under the exacting language of the statute, there is no suggestion that any other date—such as the date of an out-of-state civil union—triggers the creation of marital property.
In her application to this court, the defendant argues that the Vermont civil union created the same “economic partnership” as a marriage would in New York. According to the defendant, because the “economic partnership” commenced on the date of the civil union, this court should use the “broad interpretation” of “marital property” heralded by the Court of Appeals to commence the accrual of marital property from the date of the civil union. However, in this court’s view, the “broad interpretation” favored by the Court of Appeals in Price v Price and its successors applies to the noun “property” and not the adjective “marital.” The property acquired by a couple during a marriage should be “broadly interpreted” in favor of both parties, giving them a share of what they used and acquired during the marriage. There is nothing in the Court of Appeals opinions which suggests that this court should broadly interpret the adjective “marital” to encompass anything other than a “date of marriage” as the starting point for the accrual of marital property.
In addition, this court has researched Vermont law and can find no language, either in its civil union recognition statute, or its subsequent case law, that uses the phrase “economic partnership” to describe the civil union. While the mere invocation of such a description of a civil union would not justify tipping the scales in favor of recognizing the date of the union as a date for triggering New York’s “marital property” rules, the lack of any such language militates against this court leaning in the direction of recognizing the civil union as a starting point for the accrual of marital property.
New York’s Marriage Equality Act, read in its broadest sense, does not change this conclusion. The Act, canonized in section 10-a of the Domestic Relations Law, mandates that no public policy, legal status or right “shall differ based on the parties to the marriage . . . having been of the same sex.” In creating marriage equality, the legislature did not do what other states have done in statutes that recognize civil unions as the equivalent of marriage for purposes of their marital distribution laws. New Hampshire and Connecticut, for example, have statutes regarding recognition of out-of-state civil unions as *409 equivalent to marriage. New Hampshire’s statute, amended in 2014, states that “[a] civil union legally contracted outside of New Hampshire . . . shall be recognized as a marriage in this state” (NH Rev Stat Ann § 457:45).[4] In Connecticut, the legislature provided that “a relationship that provides substantially the same rights, benefits and responsibilities as a marriage, between two persons entered into in another state or jurisdiction and recognized as valid by such other state or jurisdiction shall be recognized as a valid marriage in this state.” (Conn Gen Stat § 46b-28a.) In nearby Massachusetts, the state’s highest court acknowledged a similar transformation, holding that a Vermont civil union was an equivalent to a Massachusetts marriage (Elia-Warnken v Elia, 463 Mass 29, 972 NE2d 17 [2012] [while holding the civil union was the equivalent of a marriage, the court did not consider property distribution issues if the civil union was dissolved]). The same court later extended recognition to registered domestic partnerships and adjudicated child custody issues for the parents, but did not address whether the state’s property distribution laws governed assets acquired during the registered domestic partnership. (Hunter v Rose, 463 Mass 488, 975 NE2d 857 [2012],)[5]
Neither the New York Legislature nor the Court of Appeals has yet moved New York’s law into the same orbit as our neighboring sister states. The legislature, in the Marriage Equality Act, simply made same-sex marriage legal in New York. It did not mandate that same-sex couples, who were united in civil unions in other states, acquired property rights through that civil union that are equal to the property rights granted to married couples. The legislature clearly has this power to transform civil unions into marriages or grant property rights, equivalent to “marital property rights” to civil union participants in New York, but it has not yet. This court *410 notes that the legislature has extended a broad array of rights to domestic partners, a recognition that unmarried, but united couples have certain rights in New York. (See Public Health Law § 2805-q [guaranteeing hospital visitation by domestic partners]; Public Health Law §4201 [2] [a] [ii-a] [granting rights of surviving domestic partners with respect to disposition of remains]; Workers’ Compensation Law § 4 [authorizing benefits for surviving domestic partners of employees killed on Sept. 11, 2001].) In short, there is no statutory authority to guide this court, and if it draws any conclusion from the statutes in New Hampshire and Connecticut, the conclusion is simply that this court should only recognize a civil union as the equivalent of marriage for property distribution purposes if the legislature expressly directs it.
The Court of Appeals has also declined to take the step of granting civil union participants the equivalent of marital property rights. In Debra H. v Janice R. (14 NY3d 576 [2010]), the High Court employed the comity doctrine to sanction a civil union as a source for the presumption of parentage and granted a partner parental rights over a child. The defendant in this case argues that it would be an unacceptable anomaly if the Court of Appeals gave a partner in a civil union the rights of parent over a child born during the union (a right heretofore only permitted to a married partner), but denied the same partner the property rights created by the civil union under Vermont law. This court declines to read Debra H. v Janice R. in such a sweeping fashion. The Court of Appeals declined to broadly suggest that comity would compel New York to recognize the civil union as a source of property rights by one party in property acquired by the other after the date of the civil union. The Court warned against any such broad reading of its holding, adding in cautious prose that the “potential legal ramifications in New York of entering into a civil union in Vermont” remained unsettled. (Id. at 599.) The Court made it clear that it was solely resolving the “parentage issue” before the court. (Id. at 601 [“in this case (we) decide only that New York will recognize parentage created by a civil union in Vermont”].) But while the majority seemingly closed the door to the extension of comity to include civil union’s definition of “property rights,” the concurring opinion by Judge Graffeo suggests the door might not be firmly shut. In justifying the comity doctrine as a source to recognize the civil union as a basis for parentage, the Judge said:
*411 “[T]he doctrine of comity would be inapplicable if the parentage provision in Vermont’s civil union statute was inconsistent with New York public policy. But, in this regard, our sister-state’s law— like New York’s—predicates parentage on objective evidence of a formal legal relationship—the civil union. Since Debra H.’s status as a parent under Vermont Law does not turn on the application of amorphous equitable standards but depends on the fact that she and Janice R. entered into a civil union before the child was born, it does not run afoul of the policy . . . as it does not undermine New York’s interest in ensuring certainty for parents and children.” (Id. at 606 [emphasis added; Graffeo, J., concurring].)
This opinion suggests that a more easily defined standard for determining rights and responsibilities might be enforced under the comity doctrine, especially if the enforcement supported an important public policy in New York.
After Janice R., the prevailing judicial treatment of marital-like rights in civil unions in New York seems to splinter. In Dickerson v Thompson (88 AD3d 121 [3d Dept 2011]), cited earlier for the principle that a court could dissolve a civil union, the Court did not provide any guidance on what property distribution of the civil union would entail. In another New York case, the court, jumping in where the Court of Appeals left off in Janice R., noted that New York traditionally employs the doctrine broadly:
“The doctrine of comity—under which this state defers to the laws of the jurisdiction where a marriage took place—has resulted in New York’s recognition not only of common law marriages (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289 [1980]), but of other marriages that could not be legally entered into in New York. Most notably, principles of comity guided courts to grant recognition to same-sex marriages performed in other countries (Martinez v County of Monroe, 50 AD3d 189, 191 [4th Dept 2008]) and in other states (C.M. v C.C., 21 Misc 3d 926 [Sup Ct, NY County 2008]) prior to the legalization of same-sex marriage in New York.” (Ponorovskaya v Stecklow, 45 Misc 3d 597, 604 [Sup Ct, NY County 2014].)
However, the court there recognized that New York’s comity rule, while pliable in its reach to recognize marriages, is not *412 elastic enough to transform a civil union in another state into a marriage in New York. Even before Janice R., the New York courts wrestled with questions of whether a New York court could treat a civil union as the equivalent of a marriage and, in response to a complaint to dissolve the union, utilize New York’s—or Vermont’s—rules for post-dissolution relief. (B.S. v F.B., 25 Misc 3d 520 [Sup Ct, Westchester County 2009].) In that case, the court suggested that parties may have a properly pleaded complaint for dissolution of the civil union heard by the New York State Supreme Court which possesses the general jurisdiction to hear and decide all equitable civil actions. However, because the complaint in that case sought to terminate a marriage, the court declined to hear it and, as a result, never analyzed whether New York’s definition of marital property would dictate the composition of the “civil union” estate.
While comity is an elastic doctrine that as a matter of common law can stretch from one state to another, there is an equally compelling principle that only New York’s Legislature can define how property is distributed under its equitable distribution laws. Couples may be married in community property states which may grant broader property rights to married couples than extended under New York law.[6] If New York, through its divorce laws, is forced to import those “community property” rules, the concept of equitable distribution will depend more on the situs of the marriage rather than that of divorce. In addition, a couple married in a community property state, but living their entire lives in New York might have an avenue to argue for broader “marital property” rights than exist under New York law. There is no indication from the legislature or the Court of Appeals that the definition of property rights distributed in a divorce action—long a stable of state courts and legislatures—would be ceded so easily to other states. The complications for the courts—and litigants—of different property rights for litigants based on the situs of their marriage could be significant. Similarly, the creation of post-civil union (or registered domestic partnership) property rights which could be distributed by law is directly at odds with the date specific definition of marital property in New York.
In reaching this conclusion, this court recognizes that New York, as a matter of full faith and credit, acknowledges mar *413 riages that would otherwise not be permitted in New York. For example, New York recognizes common-law marriage, legal in other states. (Matter of Mott v Duncan Petroleum Trans., 51 NY2d 289, 292 [1980]; Matter of Catapano, 17 AD3d 672 [2d Dept 2005].) This recognition extends even though New York abolished common-law marriages in this state in 1933. (Domestic Relations Law § 11, as amended by L 1933, ch 606.) New York even continues to recognize common-law marriages that came into existence in New York before New York’s Legislature abolished them. (Matter of Benjamin, 34 NY2d 27 [1974].) The defendant argues for a parity in state recognition: if a common-law marriage in another state is recognized in New York (and equitable distribution applied to property accumulated during the common-law marriage) then the civil union (the equivalent of a marriage in Vermont) should be recognized as well, and the same distribution principles applied. The New York courts have had to determine whether there were sufficient facts extant in other states to constitute common-law marriage in the other state. (Matter of Steiner, 12 AD3d 682 [2d Dept 2004].) New York has also recognized forms of divorce that are not authorized by New York law. (T.T. v K.A., 20 Misc 3d 1104[A], 2008 NY Slip Op 51213[U] [Sup Ct, Nassau County 2008].) In short, the defendant suggests that the mere complexity involved in applying “marriage determination” or “divorce determination rules” from other states and jurisdictions is not a rationale, under applicable case law, to avoid applying a “damages from termination of a civil union”—or equitable distribution—to the Vermont civil union in this matter.
The defendant also has a significant contract based argument. Under this theory, the civil union is a contract, similar to the marriage contract. As a matter of contract, subject to termination by a court of general equity, this court must decide whether to utilize New York or Vermont law as the basis for developing a remedy after termination of the agreement. The New York courts apply the more flexible “center of gravity” or “grouping of contacts” inquiry, which permits consideration of the “spectrum of significant contacts” in order to determine which state has the most significant contacts to the particular contract dispute. (Matter of Unitrin Direct/Warner Ins. Co. v Brand, 120 AD3d 698, 700 [2d Dept 2014].) The court also acknowledges that the New York courts have routinely provided equitable remedies for breach of contract claims. (511 W. 232nd *414 Owners Corp. v Jennifer Realty Co., 285 AD2d 244 [1st Dept 2001]; Hollander v Metropolitan Transp. Auth., 48 Misc 3d 1206[A], 2015 NY Slip Op 50991[U] [Sup Ct, NY County 2015].)
This line of inquiry carries the court into a debate over whether the civil union is the legal equivalent of an express contract, enforceable in New York, which might permit distribution of assets acquired during the period of the civil union. In this respect, a civil union bears significant resemblance to the express agreements between couples for distribution of assets that were dissected in Morone v Morone (50 NY2d 481 [1980]). While often cited in support of New York’s nonrecognition of palimony, the Court of Appeals in Morone v Morone did permit an express agreement for asset-sharing between a couple to be heard and adjudicated in New York’s Court even if not in writing. The court did refuse to accord recognition to an implied agreement that it described as follows: “conceptually so amorphous as practically to defy equitable enforcement, and inconsistent with the legislative policy enunciated in 1933 when common-law marriages were abolished in New York.” {Id. at 484.) Therefore, cast in the Morone v Morone analysis, this court is tempted to determine whether the Vermont civil union is an express agreement or “conceptually so amorphous as practically to defy equitable enforcement.” Other courts, in the wake of Morone v Morone, have demarcated the same principle:
“While New York has rejected the concept of ‘palimony,’ it has acknowledged that unmarried couples are free to contract with each other, but that such contracts will not be implied simply from the fact of cohabitation. See Morone v Morone, 50 NY2d 481 (1980). Difficulties of proof necessary to establish financial and property rights between unmarried couples compel the express contract, rather than an implied one, though it need not be in writing. Id. at 487-88.” (Matter of Basso v LO Electric/Oliver, 46 Misc 3d 1227[A], 2015 NY Slip Op 50324[U], *3 [Sup Ct, Putnam County 2015].)
The defendant, in support of this argument, notes that the civil union, at the time it was entered into by this couple, had well-defined obligations and legal responsibilities. In her view, the civil union is not an “amorphous” implied agreement, but instead a legally-defined agreement with rights, responsibilities, and consequences upon breach of the agreement. In this court’s view, the defendant’s argument has a power logic: if this court has the power, in equity, to dissolve a civil union, *415 then the civil union may be a form of express agreement that the New York courts recognize and then this court can decide damages or other equitable relief that flow from the termination of the civil union. The Court of Appeals in Morone v Morone seems to suggest that the proof problems, inherent in an implied agreement and which militated against its recognition by the Court, would not be present when a court is asked to enforce a civil union created by statute in another state:
“For courts to attempt through hindsight to sort out the intentions of the parties and affix jural significance to conduct carried out within an essentially private and generally noncontractual relationship runs too great a risk of error. Absent an express agreement, there is no frame of reference against which to compare the testimony presented and the character of the evidence that can be presented becomes more evanescent. There is, therefore, substantially greater risk of emotion-laden afterthought, not to mention fraud, in attempting to ascertain by implication what services, if any, were rendered gratuitously and what compensation, if any, the parties intended to be paid.” (50 NY2d at 488.)
In this court’s view, the proof problems and other complications that drove the Court of Appeals to deny recognition of an implied agreement for asset distribution between an unmarried couple are not present, in the same degree, in a civil union. A civil union, established by a state, is not the legal equivalent of the implied palimony agreement before the Court in Morone v Morone. The consequences for the breach of the implied agreement—which troubled the Court in Morone v Morone—are not present if the underlaying express agreement is a civil union in Vermont.
In addition, this court detects a riff in a textual analysis of the majority opinion in Morone v Morone and the concurring opinion of Judge Graffeo, joined by Judge Jones, in Debra H. v Janice R. The analysis focuses on the word “amorphous.” In both instances, the Judges, speaking as majority in one case and concurrence in the other, suggest that New York should avoid giving legal significance to “amorphous” interpersonal relationships. The common use of the word “amorphous” indicates the Judges were reluctant to push the common law into ill-defined interpersonal relationships and create new rights and responsibilities. But, a Vermont civil union, defined *416 by statute, is not amorphous: it has clear statutory contours and express requirements. It would seem to escape the designation as “amorphous” and might qualify as the type of express agreement that Morone v Morone permits to be heard in the New York courts. However, whether this court should, in interpreting the Court of Appeals’ use of the word “amorphous” in these opinions, conclude that the common use of this word was a springboard to change the definition of “marital property” to include property—acquired during a statutorily well-defined union in another state, but not acquired during the marriage— is, in view of this court’s limited authority, unwise. This interpretative read—based on the use of the same word by Judges more than two decades apart—is too tender to carry such weight.
Despite the seeming persuasiveness of this argument that the civil union in this case may fulfill the requirements for an “express contract” enforceable under Morone v Morone, this court, faced with a legislative command regarding the definition of “marital property,” declines to accept it. The failure of the legislature to recognize “civil unions” and the strict definition of “marital property” as the starting point for considering equitable distribution of property prohibit this court from venturing to that conclusion. There is no general common law of equity that is equivalent to the statutory creation of an equitable distribution power in the Domestic Relations Law. Equitable distribution of property from a titled party to a non-titled party is only permitted in New York if the parties are married, either under the laws of New York, or other states or nations. The Court of Appeals has repeatedly noted that a “marriage”—of whatever type or from whatever jurisdiction—is the only touchstone for equitable distribution of property in New York:
“[0]ur statute recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time of acquisition. Those things acquired during marriage and subject to distribution have been classified as ‘marital property’ although, as one commentator has observed, they hardly fall within the traditional property concepts because there is no common-law property interest remotely resembling marital property. ‘It is a statutory creature, is of no meaning whatsoever during *417 the normal course of a marriage and arises full-grown, like Athena, upon the signing of a separation agreement or the commencement of a matrimonial action. [Thus] [i]t is hardly surprising, and not at all relevant, that traditional common law property concepts do not fit in parsing the meaning of “marital property” ’ (Florescue, ‘Market Value’, Professional Licenses and Marital Property: A Dilemma in Search of a Horn, 1982 NY St Bar Assn Fam L Rev 13 [Dec.])” (O’Brien v O’Brien, 66 NY2d 576, 583-584 [1985] [having classified the “property” subject to distribution, the legislature did not attempt to go further and define it, but left it to the courts to determine what interests come within the terms of the statute]).
After O’Brien, the Court of Appeals in Fields v Fields (15 NY3d 158 [2010]) again reiterated that marriage was the touchstone for determining property subject to equitable distribution. “It is telling that the Legislature chose to initially categorize all property, of whatever nature, acquired after parties marry as marital property.” (Id. at 162; Ceravolo v DeSantis, 125 AD3d 113, 115 [3d Dept 2015] [“the economic partnership created by marriage cannot exist until marriage has occurred”]; Sinha v Sinha, 285 AD2d 801, 803 [3d Dept 2001] [marital property is a creation of statute].) The only binding of couples to create a right to equitable distribution of property rights, cognizable in New York, is a marriage. (Dee v Rakower, 112 AD3d 204, 216 [2d Dept 2013, Dillon, J., dissenting] [by virtue of the lack of a marriage contract, the parties are not eligible for the benefits and protections of New York’s equitable distribution law, as embodied in Domestic Relations Law § 236 (B) (5) and its paragraphs].) The legislature has permitted distribution of property to a person without legal title only if the party seeking the property has participated in the statutory defined marriage in New York or a marriage otherwise recognized by New York.[7] (M v F, 27 Misc 3d 1205[A], 2010 NY Slip Op 50563 [U] [Sup Ct, NY County 2010] [unless and until the law imposes equitable distribution on unmarried couples, in New York, at least, the legal status of marriage remains vitally important to establishing the economic rights of members of a couple].) If this court recognized a contractual *418 right and the remedy of equitable distribution for other “couples contracts”—civil unions or domestic partnerships— New York’s distinction, between marriage and other couples relationships, long chiseled in statute, would be eradicated. The courts would be forced to decide contractual remedies involving property distribution to unmarried couples under property right principles borrowed from other states. The New York courts have never permitted it. The legislature has never allowed it.
In reaching this conclusion, the court is struck by the anomaly this case represents: this court is dissolving a preexisting civil union, but only allowing equitable property distribution based on the couple’s marriage. Any “civil union” property—which would be subject to distribution if this matter were venued in Vermont—remains titled in the name of the current title holder and is not subject to distribution. In short, this court provides one remedy to the couple—dissolving the civil union, but declines to provide any further remedies based on their civil union.[8] This court has no solution for this conundrum without violating long-standing principles in New York’s marriage-based laws. Any further answer rests with the legislature. When asked whether to marry New York’s principles of equitable distribution to property rights created by a civil union in Vermont, this court repeats a two-word answer, albeit contrary to the two words recited at the commencement of this opinion. Simply put: I can’t.
*419 The defendant is granted summary judgment dissolving the civil union. The court holds, as a matter of law, that neither party is entitled to equitable distribution of any assets, acquired in their own names during the period of the civil union, prior to the date of marriage. The issue of either party’s right to a divorce under section 170 (7) of the Domestic Relations Law and the distribution of marital property under that statute are reserved to trial.

. In her argument to this court, the defendant raises, albeit somewhat obliquely, a challenge to the definition of marital property on constitutional grounds. The Court of Appeals in Hernandez v Robles (7 NY3d 338 [2006]) silenced those challenges, concluding that the legislature, in fashioning the state’s marital laws, is not obligated to include all possible interpersonal relationships within the scope of the statute. By extension, this court concludes that the legislature is not required, by constitutional mandate, to make a Vermont civil union the starting point for distribution of “marital property” in New York. The Full Faith and Credit Clause of the United States Constitution is also not implicated in this case. The “public policy exception” clause does not compel a state to substitute the statutes of other states for its own when dealing with a subject matter which it is competent to legislate. (Nevada v Hall, 440 US 410, 441 [1979].)

. The defendant in this case argues that the couple were “united” in a ceremony in Indiana in 2001. She provides a certificate from the ceremony as evidence of this “union.” There is no reference to marriage in the certificate, and there is no suggestion that Indiana recognized same-sex marriage, registered domestic partnerships, civil unions, or “union” ceremonies in 2001 as having any legal impact on the couple involved. The court declines to give any legal credence to this “union.”

. In her papers before the court, the plaintiff argues that if she had known that the civil union created some joint property rights, she could have used a prenuptial agreement to protect her separate property interest. The court discounts this after-the-fact rationale. The plaintiff never entered a prenuptial agreement before getting married, a fact which undercuts the sincerity of that claim.

. However, this statute does not convert the civil union into a marriage under New Hampshire law. Instead couples with civil unions will receive the same state benefits and protections, but not be considered married. In addition, New Hampshire’s statute provides that a person in a civil union may marry the same party without dissolution of the union. (NH Rev Stat Ann § 457:45.) By implication, New Hampshire’s statute envisions that if the person seeks to marry another, the out-of-state civil union must first be dissolved.

. New Jersey, by statute, expressly permits its courts to dissolve civil unions and provide relief comparable to a dissolution of a marriage. (NJ Stat Ann § 2A:34-23; Beltra v Beltra, 2013 WL 1457437, 2013 NJ Super Unpub LEXIS 812 [App Div, Apr. 11, 2013, No. A-0297-11T3].)

. There are nine community property states: Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington, and Wisconsin.

. The Canadian marriage between this same-sex couple is clearly recognized in New York. (Martinez v County of Monroe, 50 AD3d 189, 192 [4th Dept 2008].)

. The apparent anomaly—dissolving the union, but providing no ancillary relief—was made clear in the concurring opinion in Dickerson v Thompson:
“One thing that was clear in this area of law was that getting out of a civil union (or same-sex marriage) would not be hurdle-free for nonresidents of the jurisdiction granting such unions. Vermont’s ‘Guide to Vermont Weddings and Civil Unions’ specifically warned nonresidents in such regard (see Guide to Vermont Weddings and Civil Unions, http://www.vermont.com/ weddings_civilunions.efm [accessed June 27, 2011] [‘It is easy to get a civil union in Vermont, but it may be hard to dissolve the civil union later’]), and cases from various jurisdictions reflected the difficulties (see e.g. Chambers v Ormiston, 935 A2d 956 [RI 2007]; In re Marriage of J.B. & H.B., 326 SW3d 654 [Tex 2010]; Kern v Taney, 11 Pa D & C 5th 558 [2010]).” (Dickerson v Thompson, 88 AD3d at 127 n 2 [Lahtinen, J., concurring].)
In the later cases, the courts declined to dissolve marriages not recognized by the home state. Whether the Supreme Court decision in Obergefell v Hodges changes those results is outside this court’s competence.